**Reversed and Remanded; Opinion Filed August 6, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-12-00386-CV
_____

## KSWO TELEVISION CO., INC., PANHANDLE TELECASTING LIMITED PARTNERSHIP, MIDESSA TELEVISION LIMITED PARTNERSHIP, CENTEX TELEVISION LIMITED PARTNERSHIP, ADELANTE TELEVISION LIMITED PARTNERSHIP, AND MIDESSA BROADCASTING LIMITED PARTNERSHIP, Appellants
## v.
## KFDA OPERATING COMPANY, LLC, KFDA LICENSE COMPANY, LLC, KSWO OPERATING COMPANY, LLC, KSWO LICENSE COMPANY, LLC, KXXV OPERATING COMPANY, LLC, KXXV LICENSE COMPANY, LLC, KWES OPERATING COMPANY, LLC, KWES LICENSE COMPANY, LLC, KKTM OPERATING COMPANY, LLC, AND KKTM LICENSE COMPANY, LLC, Appellees

On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-12-2694-B

### OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Moseley

Appellants[1] are the Sellers under an asset purchase agreement and appellees[2] are the

_____

[1] KSWO Television Co., Inc., Panhandle Telecasting Limited Partnership, Midessa Television Limited Partnership, Centex Television Limited Partnership, Adelante Television Limited Partnership, and Midessa Broadcasting Limited Partnership, collectively referred to as Sellers.

[2] KFDA Operating Company, LLC, KFDA License Company, LLC, KSWO Operating Company, LLC, KSWO License Company, LLC, KXXV Operating Company, LLC, KXXV License Company, LLC, KWES Operating Company, LLC, KWES License Company, LLC, KKTM Operating Company, LLC, and KKTM License

Buyers. The question presented is, under the terms of the asset purchase agreement and Delaware law,[3] who is entitled to the escrow money when the sale failed to close? The Sellers contend the Buyers manufactured a reason to terminate the agreement after Sellers refused to reduce the price. Buyers contend Sellers breached the agreement, giving them the right to terminate the agreement. In addition, Buyers assert the mere pendency of their lawsuit against Sellers caused a condition to closing to fail; that condition was that no action for damages or other relief in connection with the agreement be pending at the time of closing. Sellers counter that Buyers improperly caused the condition to fail by filing this lawsuit.

The trial court granted summary judgment for Buyers and Sellers appeal. For the following reasons, we reverse and remand.

**BACKGROUND**

Buyers and Sellers entered into an asset purchase agreement (APA) in June 2008 to transfer ownership of several television and radio stations for a price of approximately $115,000,000. Under the terms of the APA, Buyers deposited $5,750,000 in escrow. The APA provided that if the closing did not occur and Sellers terminated the APA for an uncured breach by Buyers, Sellers would receive the escrow funds as liquidated damages. On the other hand, if the closing did not occur and the APA was terminated for any other reason, the Buyers would receive the escrow funds. The APA provided that neither party could terminate the agreement if that party was in material breach of the agreement.

The deadline to close the sale was December 31, 2008. Several weeks before the

---

Company, LLC, collectively referred to as Buyers.

[3] The parties agreed in section 9.8 that the APA and all disputes arising out of or relating to the agreement would be governed by the internal law of Delaware. Under section 9.9, both parties agreed to submit to the jurisdiction of the federal and state courts in Delaware and agreed not to commence any action relating to the APA except in federal or state courts in Delaware. Neither party, however, has objected to the proceedings in this case under this provision.

deadline, Buyers demanded a price reduction because changes in the financial markets had significantly increased their financing costs. Sellers refused to reduce the price.

On December 12, 2008, Buyers gave notice of termination of the APA for Sellers' breach of certain representations regarding the stations. A week later, Buyers filed this lawsuit seeking damages and specific performance of the provision to release the escrow funds to Buyers.

The sale did not close by the deadline. On January 14, 2009, Sellers gave notice of termination of the APA because of the Buyers' material breach of the APA. Sellers later filed a counterclaim contending that Buyers' termination was ineffective and sought to recover the escrow funds.

Buyers moved for partial summary judgment on the grounds that (1) Sellers materially breached the APA in several ways and (2) there was no duty to close the transaction because this lawsuit was a pending action under the APA condition that no action be pending at the time of closing. The trial court denied the motion for partial summary judgment. Buyers then filed a limited motion to reconsider, in which they argued the trial court should reconsider the motion for partial summary judgment and grant it because it was undisputed this lawsuit was pending on December 31, 2008, causing the failure of the no-pending action condition to the obligation to close.

After additional briefing and arguments, the trial court signed an order granting the limited motion to reconsider and the motion for partial summary judgment. The order did not specify the grounds the trial court ruled upon. The parties filed an agreed motion for severance, which the trial court granted. The trial court then rendered a final judgment vacating its prior order denying the motion for partial summary judgment, incorporating the order granting Buyers' limited motion to reconsider and motion for partial summary judgment, and rendering judgment for Buyers.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The standards for reviewing summary judgments are well established and we follow them in reviewing this appeal. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standards of review). In a traditional motion for summary judgment, the party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548. In deciding whether a disputed material fact issue exists, we review the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

An appellate court must review all of the summary judgment grounds on which the trial court actually ruled, whether granted or denied, and which are dispositive of the appeal, and may consider any grounds on which the trial court did not rule. *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5–6 (Tex. 1999).

## ANALYSIS

Sellers raise two issues on appeal, contending the trial court erred by granting summary judgment for Buyers and by rendering summary judgment on grounds that were not before it. We analyze this case in three parts: (1) what summary judgment grounds could the trial court consider; (2) whether Buyers proved their material breach claims as a matter of law; and (3) whether the alleged failure of the no-pending action condition is an independent ground for affirming the summary judgment.

### A. Summary Judgment Grounds

Sellers argue we should consider only the alleged failure of the "no-pending action" condition because, by filing the limited motion for reconsideration, Buyers abandoned all other grounds raised in their earlier motion for partial summary judgment.

The trial court has plenary power over its interlocutory rulings. *See Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam). "A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case." *Stroop v. N. County Mut. Ins. Co.*, 133 S.W.3d 844, 852 (Tex. App.—Dallas 2004, pet. denied) (quoting *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 877 (Tex. App.—Corpus Christi 1996, writ denied)). Thus, the trial court could have reconsidered and granted Buyers' motion for partial summary judgment even without the limited motion for reconsideration.

Turning to Sellers' specific argument, this Court has said an amended motion for summary judgment supersedes and supplants the previous motion, which may no longer be considered. *Gibson v. Park Cities Ford, Ltd.*, 174 S.W.3d 930, 932 (Tex. App.—Dallas 2005, no pet.); *Dallas Ind. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 231 (Tex. App.—Dallas 2000, pet. denied); *see also State v. Seventeen Thousand Dollars*, 809 S.W.2d 637, 639 (Tex. App.—Corpus Christi 1991, no writ).[4] The issue here is whether Buyers' limited motion for reconsideration was an amended motion for summary judgment.

We look to the substance of the motion, not its title, to determine its effect. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008) (orig. proceeding); *Surgitek, Bristol-*

---

[4] We note the supreme court has not decided whether this holding is correct. *See Padilla v. LaFrance*, 907 S.W.2d 454, 459 (Tex. 1995). In *Padilla*¸ the supreme court noted a court of appeals holding that a substituted or amended motion for summary judgment supersedes the previous motion, and said, "Even if this holding is correct, an issue we do not decide, it does not support the LaFrances' position here." *Padilla*, 907 S.W.2d at 459 (quoting *Seventeen Thousand Dollars*, 809 S.W.2d at 639).

*Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999).  The limited motion for reconsideration did not state it was amending the prior motion or indicate any intent to waive the grounds raised in the prior motion.  The limited motion specifically mentioned the motion for partial summary judgment and reiterated the failure of the no-pending action condition, a ground raised in the earlier motion.  No new grounds for summary judgment were raised.  The limited motion requested the trial court, on this very limited basis, to reconsider and grant the motion for partial summary judgment.

Sellers cite *Lection v. Dyll*, 65 S.W.3d 696 (Tex. App.—Dallas 2001, pet. denied) in support of their argument.  In *Lection*, the issue was whether the summary judgment record included the by-laws of the hospital involved in the case.  The by-laws were attached to Lection's supplemental response to the motion for summary judgment, but not to her amended response filed seven days before the first hearing.  *Id.* at 702.  At that hearing, the trial court denied Dyll's motion for summary judgment.  Dyll later filed a motion to reconsider; as a part of her response Lection filed the by-laws.  Dyll argued the motion to reconsider was a motion for new trial and Lection could not present new evidence—the by-laws—without leave of court.  *Id.* at 703.  We rejected that argument because a motion to reconsider the denial of a motion for summary judgment is not a post-judgment motion seeking a substantive change in the judgment. *Id.*  The original denial of the motion for summary judgment was an interlocutory order; thus there was no judgment to modify.  We stated, "In the procedural posture of this case, the motion to reconsider the denial of the motion for summary judgment was simply a reassertion of the motion for summary judgment." *Id.*  Because Lection filed the by-laws in response to the motion for reconsideration, we concluded they were properly before the trial court. *Id.*

In the case before us, Buyers' limited motion to reconsider was "simply a reassertion of the motion for [partial] summary judgment." *Id.*  It was not an amended motion for partial

summary judgment. Although Buyers argued one specific ground raised in the motion for partial summary judgment, they did not abandon, waive, or supersede the other grounds raised in that motion. Moreover, the trial court's orders indicate it was granting both the limited motion for reconsideration and the motion for partial summary judgment. The final judgment vacated the order denying the motion for partial summary judgment and incorporated the order granting the limited motion for reconsideration and the motion for partial summary judgment.

We conclude the trial court could have ruled on any grounds raised in Buyers' motion for partial summary judgment. Accordingly, we reject Sellers' argument that we are constrained from considering all the grounds set forth in the Buyers' motion for summary judgment that may support the trial court's judgment. We overrule Sellers' second issue.

## B. Applicable Law

The elements of a cause of action for breach of contract under Delaware law are the existence of a contract, the breach of an obligation imposed by that contract, and the resultant damage to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Delaware also recognizes that a material breach by one party to a contract relieves the other party's obligation to perform the contract. *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003). Conversely, a slight breach may give rise to a claim for damages, but will not relieve the non-breaching party from performing its obligations under the contract. *See id.* Whether a breach is material is a question of degree and is determined by considering a number of factors. *See id.* (quoting factors listed in RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)).[5] A material breach excuses performance of the contract, but "a

---

[5] These factors include: "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will

–7–

nonmaterial—or *de minimis*—breach will not allow the non-breaching party to avoid its obligations under the contract." *DeMarie v. Neff*, No. CIV.A. 2077-S, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005). As a general rule the party who first commits a material breach of a contract cannot complain if the other party later refuses to perform. *Hudson v. D & V Mason Contractors, Inc.*, 252 A.2d 166, 170 (Del. Super. 1969).

Under Delaware law, a court first looks to the express terms of the contract to determine the intent of the parties. *See BAE Sys. N. Am., Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *4 (Del. Ch. Aug. 3, 2004). If the terms are clear on their face, the court will give the terms the meaning that would be ascribed to them by a reasonable third party. *See id.* If, however, the contract is reasonably susceptible to different interpretations or may have two or more different meanings, it is ambiguous and the court will look to extrinsic evidence to ascertain the reasonable shared expectations of the parties at the time of contracting. *Id.*; *see also VLIW Tech.*, 840 A.2d at 615; *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (1996). Whether a contract is ambiguous is a question for the court to resolve as a matter of law. *HIFN, Inc. v. Intel Corp.*, C.A. No. 1835–VCS, 2007 WL 1309376, at *9 (Del. Ch. May 2, 2007).

## C. Material Breach

### 1. APA Provisions

To determine whether Buyers proved Sellers committed a material breach of the APA as a matter of law, we begin with the terms of the agreement. The term material breach is not defined in the APA. However, the concepts of material or materiality are addressed at several places in the agreement. As will be seen, the meaning and application of those concepts is not entirely clear from the language of the agreement.

---

suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." RESTATEMENT (SECOND) OF CONTRACTS § 241.

We begin with a brief summary of the APA provisions at issue and then discuss the specific terms in more detail. Section 2.6(b) of the APA provides that Buyers are entitled to the escrow funds if the closing does not occur and the APA is terminated for any reason other than Sellers' termination of the APA for Buyers' breaches. The APA may be terminated before closing (1) by mutual written consent of the parties; (2) by Sellers if Buyers breach or fail to perform; (3) by Buyers if Sellers breach or fail to perform; and (4) by either party if the closing has not occurred by December 31, 2008.[6] Neither party can terminate the APA if that party is in material breach of the agreement.

The parties focus primarily on Buyers' right to terminate for Sellers' breaches or failure to perform. Section 8.1(b)(ii) provides that Buyers may terminate the agreement:

> if the Sellers breach or fail to perform in any respect any of their representations, warranties or covenants contained in this Agreement and such breach or failure to perform
>
> > (x) would give rise to the failure of a condition set forth in <u>Section 6.3</u>,
> >
> > (y) cannot be cured or has not been cured within 30 days after written notice by the Buyers of any other breach of this Agreement and
> >
> > (z) has not been waived by the Buyers . . ..

Section 6.3 states the conditions to the obligations of Buyers. Section 6.3(a) actually contains several conditions. It provides:

> The obligations of the Buyers to consummate the transactions contemplated hereby shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions, any of which may be waived in writing by the Buyers in their sole discretion:
>
> > (a) The representations and warranties of the Sellers contained in this Agreement shall be true and correct both when made and as of the Closing Date, or in the case of representations and warranties that are made as of a specified date, such representations and warranties shall be true and correct as of such specified date

---

[6] The APA contains another termination provision for final governmental actions to restrain the transactions, but this provision is not raised by either party.

(without giving effect to any limitation or qualification as to "materiality" (including the word "material") or "Material Adverse Effect" set forth therein, except as provided in Section 7.5(d)), except where the failure to be so true and correct, individually or in the aggregate, has not had, and would not reasonably be expected to have, a Material Adverse Effect. The Sellers shall have performed all obligations and agreements and complied with all covenants and conditions required by this Agreement to be performed or complied in all material respects with by them prior to or at the Closing (without giving effect to any limitation or qualification as to "materiality" (including the word "material") or "Material Adverse Effect" set forth therein, except as provided in Section 7.5(d)). . . .

Thus, one condition is that Sellers' representations and warranties be true and correct when made and as of closing, or as of a specific date if applicable.

One interpretation of the first sentence of section 6.3(a) is that—with one exception—whether a representation or warranty is true and correct is to be determined without giving effect to any limitation as to materiality in the representation or warranty. But there is an exception to this condition: "except where the failure to be so true and correct, individually or in the aggregate, has not had, and would not reasonably be expected to have, a Material Adverse Effect." Under this exception, an inaccurate representation or warranty causes the condition to fail only if the inaccuracy has had and would reasonably be expected to have a Material Adverse Effect (MAE).

Buyers, however, assert that the parenthetical in section 6.3(a) "expressly states this MAE standard does not apply and is to not [sic] be given effect." As a result, Buyers argue the standard for the Sellers' "true and correct" representations is absolute and without regard to whether the representation is or was materially true or false. Under this interpretation, we would look to the representation or warranty and determine whether it was literally true or false at the appropriate time.

Section 7.5(d) appears to support this argument. Under section 7.5(d), the word material

will be disregarded in determining whether there has been a breach of or inaccuracy in any representation, warranty, or covenant that is modified by the word material, with exceptions for certain sections of the APA not at issue here.[7]

In response, however, Sellers argue the parenthetical language cited by Buyers refers only to a limitation or qualification as to materiality set forth in the express terms of a specific contractual representation or warranty. "Thus, the last clause of section 6.3(a)'s first sentence is not affected by the parenthetical and requires a failure of a representation or warranty to be true and correct to have, or be reasonably expected to have, a Material Adverse Effect before Closing is subject to the fulfillment of the condition." Under this interpretation, we would first determine whether the representation or warranty was true or false at the appropriate time and then determine whether the inaccurate representations or warranties had or would reasonably be expected to have a Material Adverse Effect.

Another question is whether the term material is intended to modify the truthfulness of the representation (e.g., materially true or materially false), the representation itself (e.g., material representation), or both. For example, a representation that a station owned a video camera worth $10,000 when the camera was actually worth only $500 could be said to be materially false. However, in the context of a $115,000,000 transaction, a discrepancy of $9,500 in the value of a single asset is unlikely to be material or result in a Material Adverse Effect.

The meaning of the second sentence of section 6.3(a) is less clear than the first sentence. It provides as a condition for closing that Sellers' shall have performed or complied with all obligations, agreements, covenants, and conditions "required by this Agreement to be performed

---

[7] The APA also outlines the concept of materiality in the indemnity provisions. In section 7.2(a), Sellers broadly agree to indemnify Buyers against any losses arising from any breach of any representation or warranty made by Sellers in the APA. Section 7.5(b) establishes a threshold amount for this indemnity of $862,500. But the threshold amount does not apply to claims for breach of representations and warranties relating to authorization of the transactions contemplated by the APA or title to the transferred assets.

or complied in all material respects with by them prior to or at the Closing," but without giving effect to any limitation as to materiality set forth in therein. It is not clear what "complied in all material respects with" means in the context of the parenthetical.

In yet another challenging interpretation issue, the definition of Material Adverse Effect initially defines the term but then provides that the effect of certain circumstances shall be disregarded for purposes of determining whether a MAE has occurred. The definition of Material Adverse Effect (indented for readability) as:

> "Material Adverse Effect" means any event, change, circumstance, effect or state of facts that is materially adverse to
>
>> (i) the business, financial condition, results of operations, assets, prospects, liabilities or results of operations of the Business, or a material adverse change in the value of the Business or the Transferred Assets,
>>
>>> provided, however, that for purposes of determining whether such a "Material Adverse Effect" has occurred, there shall be disregarded the effect of any circumstance, change, development, event or state of facts primarily arising out of or primarily attributable to any of the following, either alone or in combination,
>>>
>>>> (1) the markets in which the Business operates generally, including the television broadcasting industry generally, or competition in or with industry,
>>>>
>>>> (2) general national, regional or international economic, financial or political conditions or markets, . . .
>>>>
>>>> (provided that, in the case of any occurrence described in clause (1), (2), . . . above, the effect thereof on the Business is not materially adverse as compared with television broadcasters (or, insofar as the matter in question relates to the Radio Station, similarly-situated radio broadcasters) operating in small markets in Texas and Oklahoma similar to those in which the Sellers operate; or
>>
>> (ii) the ability of the Sellers to perform their obligations, or the Buyers' rights, under this Agreement or the Ancillary Agreements or the Sellers' ability to consummate the transactions contemplated hereby or thereby.

Subpart (i) contains two provisos: the first requiring that the effect of certain

circumstances will be disregarded for purposes of determining whether a MAE has occurred. The second proviso seems to say the effect of the described circumstances will be disregarded provided the effect thereof on the business is not materially adverse compared to television or radio stations operating in similar small markets in Texas and Oklahoma. But the intent of this proviso to the proviso is anything but clear. For example, the definition could mean that a national financial market event will be disregarded in determining whether there has been a MAE. It could also mean a national financial market event will be disregarded only if the effect is not materially adverse to the business as compared to other stations in similar markets. And we cannot interpret subpart (ii) of the definition—a MAE is any event, change, or circumstance that is materially adverse to Buyers' rights under the agreement—so broadly as to render the other parts of the definition meaningless. The APA does not expressly define what materially adverse means.

## 2. Ambiguity

As Sellers recognize, the APA is "extremely dense and complex." As such it is difficult to give it a definite legal meaning. In particular, it is unclear what circumstances the parties agreed would be considered material under the terms of the APA.

Neither party argues the APA is ambiguous. "But whether a contract is ambiguous is a question of law to be decided by the Court." *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808-09 (Tex. 2009) (per curiam). A court may conclude a contract is ambiguous even in the absence of a claim of ambiguity by the parties. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003) ("[The dissent] implies that, because the parties do not contend the agreement is ambiguous, we may not hold that it is. This is contrary to Texas law."); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (agreement was ambiguous even though both parties asserted agreement was unambiguous and moved for summary judgment). An appellate court

may consider whether a contract is ambiguous for the first time on appeal from a summary judgment. *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 332 (Tex. App.—Dallas 2011, no pet.) ("The court of appeals may determine ambiguity as a matter of law for the first time on appeal."); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 666–67 (Tex. App.—Dallas 2002, pet. denied) ("Patent ambiguity of a contract may be considered for the first time on appeal from a motion for summary judgment."); *Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 753 (Tex. App.—Dallas 1997, writ denied) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party.").

"When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 394. When a contract is ambiguous, "a fact finder should resolve the meaning." *Progressive County*, 284 S.W.3d at 809.

We apply Texas procedural law in this case, but we note that Delaware law is similar. Where a contract is ambiguous, an issue of material fact is raised and summary judgment must be denied. *Motorola, Inc. v. Amkor Technology, Inc.*, 849 A.2d 931, 936 (Del. 2004) ("Therefore, if reasonable people may draw different inferences from the undisputed facts, an ambiguity exists and summary judgment is inappropriate.") (discussing Illinois law); *BAE Sys.*, 2004 WL 1739522, at *5 (discussing *Amkor* and holding "Illinois law does not differ materially from those guiding Delaware courts.").

When a contract is reasonably susceptible to different interpretations or has two or more different meanings, it is ambiguous. *See VLIW Tech.*, 840 A.2d at 615. We conclude the materiality provisions of the APA are ambiguous and cannot be given a definite legal meaning. Thus there are genuine issues of material fact whether the alleged breaches were material under the terms of the APA. Accordingly, Buyers failed to establish they were entitled to summary

judgment as a matter of law on their material breach of contract claims. *See* TEX. R. CIV. P. 166a(c); *Coker*, 650 S.W.2d at 394.

## D. No-pending Action Condition

Buyers contend that even if there is a question of fact about whether Sellers breached the APA, the mere fact this lawsuit was pending at the time the deadline to close expired was a failure of a condition to closing and entitled Buyers to receive the escrow funds. Sellers argue the law does not permit a party to a contract to prevent the happening of a condition precedent and then rely on that failure of a condition in a contract dispute. They contend permitting Buyers to sue Sellers and then use that suit as a basis for claiming the failure of a condition to close would violate the prevention doctrine and the implied duty of good faith and fair dealing imposed on all contracts under Delaware law, and that it would render the APA an illusory contract as Buyers would always retain the ability to terminate the contract without penalty up to the time of closing.

We first look to the express terms of the contract to determine the intent of the parties. *See BAE Sys. N. Am., Inc.*, 2004 WL 1739522, at *4. The no-pending action condition is contained in section 6.1(a) of the APA. That section provides:

> Section 6.1 <u>General Conditions</u>.
>
> The respective obligations of the Buyers and the Sellers to consummate the transactions contemplated hereby shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions, any of which may, to the extent permitted by applicable Law, be waived in writing by any party in its sole discretion (provided that such waiver shall only be effective as to the obligations of such party):
>
> > (a) No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Law (whether temporary, preliminary or permanent) that enjoins, restrains, makes illegal or otherwise prohibits the consummation of the transactions, taken as a whole, contemplated by this Agreement or the Ancillary Agreements. Without limiting the foregoing:

–15–

(i) no party shall be subject to any restraining order or injunction restraining or prohibiting the consummation of the transactions contemplated by the Agreement; and

(ii) no Action or other proceeding shall be pending before any court or Governmental Authority in which it is sought to restrain or prohibit, or obtain damages or other relief in connection with, this Agreement or the consummation of the transactions contemplated hereby.

The language of this section indicates the condition is that no governmental authority (which includes courts) shall have entered any law that "enjoins, restrains, makes illegal or otherwise prohibits" the consummation of the transactions contemplated by the APA. Then, "without limiting the foregoing," it specifies that no party shall be subject to a restraining order or injunction prohibiting the consummation of the transaction (there is no evidence of such an order or injunction), and no "Action" shall be pending in which it is sought to restrain or prohibit, or obtain damages or other relief in connection with the APA or the transactions contemplated thereby.

One reasonable interpretation of section 6.1(a) is that it applies only to actions by governmental authorities, not the parties to the APA.[8] Another reasonable interpretation is that section 6.1(a) applies only to actions to enjoin, restrain, make illegal or otherwise prohibit the transactions contemplated by the APA. Finally, Buyers interpret section 6.1(a)(ii) to apply to any action to obtain damages or other relief in connection with the APA or the transactions contemplated thereby.

Thus, we are again faced with a contract provision that is reasonably susceptible to different interpretations and has two or more different meanings. *See VLIW Tech.*, 840 A.2d at 615. We conclude that section 6.1(a) is ambiguous. Because the contract is ambiguous, Buyers

---

[8] Sellers assume for the sake of this appeal that the section 6.1(a) applies to lawsuits between the parties. This does not prevent us from determining whether the contract is ambiguous.

failed to prove they were entitled to judgment as a matter of law based on the alleged failure of the condition stated in section 6.1(a). *See* TEX. R. CIV. P. 166a(c); *Coker*, 650 S.W.2d at 394.

**CONCLUSION**

As discussed above, we conclude as a matter of law that the APA is reasonably susceptible to different interpretations and is ambiguous.[9] The existence of ambiguities in the contract raises genuine issues of material fact as to the intent of the parties. *See Coker*, 650 S.W.2d at 394. Accordingly, Buyers failed to establish they were entitled to summary judgment as a matter of law on the grounds raised in the motion for partial summary judgment and the limited motion for reconsideration. We sustain Sellers' first issue.

We reverse the trial court's summary judgment and remand this case for further proceedings.

/Jim Moseley/
JIM MOSELEY
JUSTICE

120386F.P05

---

[9] We express no opinion about whether other parts of the APA are ambiguous.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KSWO TELEVISION CO., INC.,
PANHANDLE TELECASTING LIMITED
PARTNERSHIP, MIDESSA TELEVISION
LIMITED PARTNERSHIP, CENTEX
TELEVISION LIMITED PARTNERSHIP,
ADELANTE TELEVISION LIMITED
PARTNERSHIP, AND MIDESSA
BROADCASTING LIMITED
PARTNERSHIP, Appellant

No. 05-12-00386-CV      V.

KFDA OPERATING COMPANY, LLC,
KFDA LICENSE COMPANY, LLC,
KSWO OPERATING COMPANY, LLC,
KSWO LICENSE COMPANY, LLC,
KXXV OPERATING COMPANY, LLC,
KXXV LICENSE COMPANY, LLC,
KWES OPERATING COMPANY, LLC,
KWES LICENSE COMPANY, LLC,
KKTM OPERATING COMPANY, LLC,
AND KKTM LICENSE COMPANY, LLC,
Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-2694-B.
Opinion delivered by Justice Moseley.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants KSWO TELEVISION CO., INC., PANHANDLE
TELECASTING LIMITED PARTNERSHIP, MIDESSA TELEVISION LIMITED
PARTNERSHIP, CENTEX TELEVISION LIMITED PARTNERSHIP, ADELANTE
TELEVISION LIMITED PARTNERSHIP, AND MIDESSA BROADCASTING LIMITED
PARTNERSHIP recover their costs of this appeal from appellees KFDA OPERATING
COMPANY, LLC, KFDA LICENSE COMPANY, LLC, KSWO OPERATING COMPANY,
LLC, KSWO LICENSE COMPANY, LLC, KXXV OPERATING COMPANY, LLC, KXXV
LICENSE COMPANY, LLC, KWES OPERATING COMPANY, LLC, KWES LICENSE

COMPANY, LLC, KKTM OPERATING COMPANY, LLC, AND KKTM LICENSE COMPANY, LLC.


Judgment entered this 6th day of August, 2014.