### DIETZ v. VAN NORTWICK.
#### No. 11687.

Court of Civil Appeals of Texas. Galveston.

June 7, 1945.

Rehearing Denied June 28, 1945.

Harry W. Freeman, of Houston, for appellant.

Merrill & Scott, of Houston, and Crawford & Borofsky, of Galveston, for appellee.

CODY, Justice.

The plaintiff below was Joseph Praiss. He has not been made a party to this appeal. On July 20, 1943, he gave his promissory note to appellant Dietz in the principal sum of $4200, payable in monthly installments of $375.

Thereafter, on August 20, 1943, appellant Dietz and appellee Van Nortwick entered into a written contract by which Dietz agreed to buy certain described beer and pay therefor the sum of $7,399.90; and to buy certain described punch boards (which are gaming devices) and pay therefor the sum of $4,981.46, or a total of $12,-

381.36. By the terms of the contract it was provided that the merchandise was to be stored in a warehouse in Texas City, where Dietz ran a cafe, and be gotten from there by him. The cost of drayage to the warehouse, the insurance, etc., were to be paid by Dietz over and above the cost of the merchandise. The terms provided that payment should be made at the rate of not less than $1,238.13 a month, and that Dietz could go to the warehouse and get such of the merchandise as he desired at any time, but whatever he withdrew should be paid for in cash as withdrawn until the full sum of $12,381.36 had been paid, and that all payments which were required to be made, except those made on withdrawals of merchandise, should be applied on the tail end of the contract.

To secure the performance of the contract Dietz assigned the aforesaid Praiss note to Van Nortwick, together with the lien securing it. To further secure the performance of the contract he executed his note in the sum of $3000 payable to Van Nortwick, which was secured by a mortgage. If the contract were paid out before the notes were paid out, the notes were to be re-assigned to Dietz.

Seemingly the enforcement officers would not permit Dietz to use the punch boards in his place of business. In any case he and Van Nortwick got into a dispute, whereupon Van Nortwick notified plaintiff Praiss that he owned Praiss's note, and demanded of Praiss that he make payment direct to him. When Praiss inquired of Dietz he found that Dietz claimed still to own the note. Thereupon Praiss arranged to place the remaining payments in escrow in the Union National Bank of Houston as they fell due. Van Nortwick was not a party to the arrangement, but did not interfere with it, and Praiss finished making the remaining payments.

Thereafter, Praiss brought this suit, making Dietz, Van Nortwick, and the bank parties defendant, in order to have it judicially determined who owned his note, and to whom the money in escrow belonged.

The bank answered as a stakeholder that it claimed no interest in the money, and would pay the money to whom it was determined to belong.

Dietz answered alleging that he was the owner of the note, and entitled to the money held by the bank. By a cross-action he then sued Van Nortwick. He fully alleged the contract between himself and Van Nortwick, and that after the contract was executed he had severed the lawful part of the contract, relating to the sale of the beer, from the allegedly unlawful part of the contract relating to the sale of the punch boards, and had repudiated the sale of the punch boards. He alleged that he had paid $1656 on the contract over and above the value of merchandise which he had removed from the warehouse, and that he was entitled to recover this. And he asked for judgment against Van Nortwick in such sum of $1656, and for the cancellation of his note for $3000 held by Van Nortwick to insure performance of the contract, and asked for judgment for the money held by the bank as stakeholder.

By his answer Van Nortwick claimed the money in the bank, and traversed the allegations of Dietz's cross-action. And he also filed a cross-action against all parties. In his cross-action against Dietz he sought damages in the sum of $6003.41, on account of the breach of the contract.

Hereafter Van Nortwick will sometimes be referred to as appellee, and Dietz will sometimes be referred to as appellant.

In his cross-action seeking damages in the sum of $6,003.41, appellee sought to recover from appellant various items on which he alleged that appellant had defaulted in paying, and which he alleged appellant was obligated to pay by the terms of the contract. These items included insurance, the rental value of the warehouse, certain drayage costs, and the salary of a caretaker. Appellee further alleged that appellant repudiated the contract, and failed to remove the beer from the warehouse as he was bound to do, and that the beer caps began to rust, which caused the beer to begin to deteriorate, which compelled appellee to recondition the beer, and after so doing, appellee alleged that he sold the beer for $2900, for the account of appellant, and that he held the same as a credit to be applied in favor of appellant against such damages as he, appellee, recovered against appellant. Appellee further alleged that the fair value of the gaming devices in their then condition was the sum of $1200, and appellee by his pleadings tendered said sum as a credit in favor of appellant, upon a disclaimer to said gaming devices being filed in the case by appellant.

In his answer to appellant's action, appellee adopted the allegations of his cross-action. In other words, appellee pled the

same state of facts as constituting both his defense to appellant's action, and as constituting his cross-action against appellant. We omit appellant's further pleadings.

During the trial the parties agreed in open court that the punch boards in question were gaming devices within Articles 615–642 of the Penal Code, Vernon's Ann. P.C. arts. 615–642.

The case was tried without a jury, and the court rendered judgment:

That the plaintiff, Praiss, had fully paid off his note, and was entitled to a release of the mortgage securing its payment.

That Dietz had fully performed his contract of purchase relating to the beer, and was not indebted to Van Nortwick in any sum, and was entitled to the money held by the bank as stakeholder. Further, that he was entitled to a cancellation of his note in the sum of $3000, given to insure the performance of the contract of purchase, and to the cancellation of the mortgage securing the payment of said note. But recovery upon his cross-action for the sum of $1656 against Van Nortwick was denied.

That Van Nortwick was not entitled to recover any sum on account of the purchase price of the gaming devices, and should recover nothing on his cross-action against Dietz.

The Bank was duly discharged on its answer.

Appellee duly excepted to the judgment and gave notice of appeal, but never perfected an appeal by filing bond, etc. Appellant also excepted "to the action of the court in denying him recovery of the overpayment in the sum of $1656.00", and gave notice of appeal. Appellant perfected his appeal.

The case appears to have been tried upon the theory, acquiesced in by all parties, that such of the beer as had not been removed from the warehouse (where it was stored pursuant to the contract) by appellant, and paid for by him when removed, had been disposed of by appellee prior to the suit. In other words, it was not in dispute that all that remained on hand in the warehouse subject to the terms of the contract was the gaming devices. It was not in dispute that appellant had made a prepayment on the tail end of the contract— prepayment in the sense that no goods were removed against such prepayment.

Appellant urges a single point on appeal as ground of error, namely, that the court erred in denying appellant recovery from appellee of the sum of $1666.

Appellee has cross-assigned two points:

1. That the court erred in the implied holding that the contract was illegal and unenforceable as to the gaming devices, and in failing and refusing to render judgment for appellee for damages sustained by reason of appellant's breach of contract to pay for said gaming devices.

2. That the court erred in holding that appellant had performed his part of the contract relating to the purchase of beer, and refusing to render judgment for appellee for damages for breach of appellant's obligation to purchase the beer.

### Opinion

Punch boards are designed for gaming and can be used for no other purpose. Callison v. State, Tex.Civ.App., 146 S.W.2d 468, 469. The court impliedly held that the contract, in so far as it related to the sale of the punch boards, was illegal, and presumably found that they were sold to be used in violation of law. We are unable to hold that the court was not warranted in drawing this inference from the evidence.

The unlawful part of the contract here can easily be separated from the lawful. That is, the sale of the beer can be separated from the sale of the punch boards. Therefore, the contract was enforceable in so far as it related to the sale of beer. 10 Tex.Jur. 247. Appellee does not contend that, if the sale of the punch boards is properly held to be illegal, it is enforceable.

The contract provided that appellant should pay for the goods at the time he removed them from the warehouse, and there was ample evidence that he paid for all such goods he removed at the time he removed them. The provision of the contract requiring appellant to make payments on the tail end of the contract could have no other purpose or effect but the giving to appellee additional security that appellant would perform the contract as a whole. Had the contract as a whole been illegal, appellant, upon repudiating it, could not have recovered any part of the money so prepaid to appellee as security for the contract's performance. New Century Mfg. Co. v. Scheurer, Tex.Com.App., 45 S.W.2d 560.

As appears from the judgment, the court held that appellant had fully performed his

contract relating to the purchase of the beer, and that he was not indebted to appellee in any sum. This finding of the court must be construed in light of the issues being tried between the parties, and the evidence adduced thereon. It was contended by appellant that he took and paid for all the beer that appellee would permit him to have, but that appellee refused to permit him to take the beer unless he would also take the gaming devices. Appellee's evidence denied this. We therefore construe the aforesaid finding as meaning that the court adopted appellant's version to the effect that appellant had fully performed the contract with respect to the purchase of the beer until appellee repudiated the lawful part of the contract because appellant would not perform the whole contract, unlawful as well as lawful.

When the contract became so terminated, what right had appellant to recover the prepayment of $1656, held by appellee as security that appellant would perform the whole contract? Had the whole contract been illegal, then, as appears from the Scheurer case, supra, appellant would not have been entitled to recover the $1656, or any part of it. Had the whole contract been lawful, and appellee had without lawful justification refused to permit appellant to perform, appellant would have been entitled to recover such prepayment in toto. If, as the court held, and we think correctly held, the contract was severable into a lawful and unlawful part, it appears to us that the prepayments made thereunder must be severed in proportion to the lawful and unlawful parts of the contract. The lawful part of the contract is to the unlawful contract as $7,399.90, the contract price of the beer, is to $4,981.46, the contract price of the gaming devices. So severing the prepayment of $1656, appellant should be adjudged the portion of $1656 which corresponds to $7,399.90, and be denied recovery of the portion which corresponds to $4,-981.46. This is said subject to the modification hereafter set forth.

To hold that a severable contract, partly legal and partly illegal, was not severable so as to permit recovery of the prepayment, proportionate to the lawful part of the contract, would tend to permit the contractee to coerce the contractor to perform the whole contract.

Appellant does not contest his liability on an insurance bill to the amount of $190. The prepayment in the sum of $1656 should have deducted therefrom said sum of $190 before it is severed into the ration that $7,-399.90 bears to $4,981.46.

Heretofore we granted a motion of appellant to strike the cross-points assigned by appellee on appeal. This we did because we were then of the opinion that the cross-action by appellee to recover damages from appellant for breach of contract was severable from appellant's action to recover the prepayment of $1656. And, as appears above, appellee did not perfect his appeal. Upon reconsideration we have reached the conclusion that appellee's cross-action is not severable from appellant's action. Both arise out of the same contract. And the same state of facts which appellee pled as a defense to appellant's action, he also pled as constituting his cross-action against appellant. It was therefore not necessary for appellee to perfect an independent appeal in order to have the right to present such cross-points. Dallas Electric Supply Co. v. Branum Co., Tex.Com.App., 185 S.W.2d 427.

Appellee did not offer any evidence in support of his cross-action for damages relative to the contract in so far as it dealt with the purchase of the beer. Thus, apparently acquiescing in the view of the court that appellant had taken all the beer which appellee would permit. At least appellee made no attempt to prove up any damages with reference to the failure of appellant to complete the contract with reference to the beer. The court, we think, properly declined to receive evidence relating to appellee's cross-action for damages in connection with appellant's breach of the illegal part of the contract. So intimately connected are the cross-points, urged by appellee, with the matter raised by appellant in his point, that our ruling herein above on appellant's point by necessary implication overrules appellee's cross-points.

The judgment of the trial court must be reversed and judgment must be here rendered in favor of the appellant for the proportion of the prepayments of $1656, less $190, above indicated, to-wit, $876. In other respects, the judgment of the trial court will remain undisturbed.

The former judgment of this court will be set aside and its former opinion will be withdrawn.

Reversed and rendered in part, and in part undisturbed.