ACCEPTED
03-17-00525-CV
21562019
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/2/2018 4:24 PM
JEFFREY D. KYLE
CLERK

*ORAL ARGUMENT REQUESTED*

### NO. 03-17-00525-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/2/2018 4:24:47 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS
## AUSTIN, TEXAS

HENRY NEAL,
*Appellant*

v.

WAYNE GUIDRY AND KAT GUIDRY,
*Appellees.*

Appeal from County Court at Law No. 2,
Hay County, Texas
Trial Court Cause No. 13-0776C
The Honorable David Glickler, Presiding

## APPELLANT'S REPLY BRIEF

Michael J. Morris
Texas Bar No. 24002651
Morris & Bermudez, pllc
299 W. San Antonio
New Braunfels, Texas 78130
Phone 830-626-8779
Fax 830-627-0890
mmorris@mmbiblaw.com

Attorney for Appellants

# TABLE OF CONTENTS

Index of Authorities……………………………………………….................ii

Argument…………………………………………………………….…...1

A.     The trial court erred by failing to declare the June 18, 2013 contract for the sale of the collection for $90,000—including Congressional Medals of Honor—void because part of the consideration (the Medals of Honor) was illegal and because there was no meeting of the minds as to buying the collection without the Medals of Honor.

Prayer………………………………………………………………….…33

i

# INDEX OF AUTHORITIES

## CASES

*2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442 (Tex.App.--Houston [14th Dist.] 2012, pet. denied) ............................. 8

*Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450 (Tex.1995) ................... 21

*Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420 (Tex. 1997) .................... 24

*Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ...................................... 22, 27

*Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249 (Tex. App.--Dallas 2012, pet. denied) ............................................................... 16

*BNSF Ry. Co. v. Epple*, 07-15-00355-CV, 2016 WL 7010581 (Tex. App.--Amarillo Nov. 30, 2016, pet. denied) ................................................ 21

*Carruth v. Allen*, 368 S.W.2d 672 (Tex.App.--Austin 1963, no writ) ..... 27

*Cox Feedlots, Inc. v. Hope,* 498 S.W.2d 436 (Tex. App.--San Antonio 1973, writ ref'd n.r.e.), ........................................................... 10

*Daimler Chrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160 (Tex. App.—Fort Worth 2012, no pet.) ....................................................... 7

*Dallas Market Center Development Co. v. Liedeker,* 958 S.W.2d 382 (Tex.1997) .......................................................................... 20

*Dietz v. Van Nortwick*, 188 S.W.2d 590 (Tex. Civ. App.—Galveston 1945, writ ref'd) ............................................................ 13, 14, 15

*Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337 (Tex. App.—Dallas 2011, pet. denied) .................................................... 17

*Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170 (Tex. App.--Waco 1987, writ denied) ................................. 22

*Hartsell v. Town of Talty,* 130 S.W.3d 325 (Tex.App.-Dallas 2004, pet. denied ............................................................... 17

*Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996) ............. 4

*In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672 (Tex. 2009) .............. 24, 26

*In re Kasschau,* 11 S.W.3d 305 (Tex. App.—Houston [14th Dist.] 1999, no pet.), ........................................................... 7

*In re Stevenson*, 27 S.W.3d 195 (Tex. App.—San Antonio 2000, no pet.) ................................................................ 18, 20, 21

*In re VNA Inc.*, 403 S.W.3d 483 (Tex. App.—El Paso 2013, no pet) ....... 25

*Int'l Bus. Machines Corp. v. Lufkin Indus., Inc.,* 12-15-00223-CV, 2017 WL 2962836 (Tex. App.—Tyler July 12, 2017, no pet.) ....................... 26

*Johnson v. World All. Fin. Corp.,* 830 F.3d 192 (5th Cir. 2016) ............. 25

*Karns v. Jalapeno Tree Holdings, L.L.C.,* 459 S.W.3d 683 (Tex. App.—El Paso 2015, pet. denied) ................................................................... 4

*Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759 (Tex. App.— El Paso 2004, no pet.) ....................................................................... 16

*KSWO Television Co., Inc. v. KFDA Operating Co., LLC,* 442 S.W.3d 695 (Tex. App.—Dallas 2014, no pet.) .......................................................... 5

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670 (5th Cir. 2015) ........................................................................................................... 25

*Magee v. I. & G. N. Wood & Coal Co.*, 269 S.W.2d 498 (1954). .............. 12

*McFarland v. Haby,* 589 S.W.2d 521 (Tex.App.--Austin 1979, writ ref'd n.r.e.) ...................................................................................... 7, 12

*Methodist Hosps. of Dallas v. Corp. Communicators, Inc.,* 806 S.W.2d 879 (Tex.App.--Dallas 1991, writ denied) ........................................... 19

*Missouri Pac. R. Co. v. Cross*, 501 S.W.2d 868 (Tex. 1973) .................... 19

*Modica v. Howard*, 161 S.W.2d 1093 (Tex. Civ. App.–Beaumont 1942, no writ) ....................................................................................... 22

*Montgomery v. Browder*, 930 S.W.2d 772 (Tex.App.—Amarillo 1996, writ denied) .................................................................................... 7

iv

*Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419 (Tex. 2015).24, 25

*Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20 (Tex. 1987)21, 22, 27

*Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805 (Tex. 2009).5

*Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.,* 896 S.W.2d 156 (Tex. 1995) ........................................................................................24

*R.R. Comm'n of Texas v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559 (Tex. 2016) ........................................................................................32

*Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667 (Tex.1990),...........................11

*Raywood Rice Canal & Milling Co. v. Erp*, 146 S.W. 155 (Tex. 1912)...12

*Redgrave v. Wilkinson*, 208 S.W.2d 150 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.)................................................................. 13, 14

*Rogers v. Wolfson*, 763 S.W.2d 922 (Tex. App.—Dallas 1989, writ denied) ........................................................................................11

*Royal Indemnity Company v. Marshall, 388 S.W.2d 176 (Tex. 1965)......7*

*Royal Maccabees Life Ins. Co. v. James,* 146 S.W.3d 340 (Tex. App.— Dallas 2004, pet. denied).................................................................4

*Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171 (Tex. 1997).....24

*Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986) ...............25

*State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235 (Tex.1992) ................................................................................21

*State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235 (Tex. 1992) ................................................................................18

*Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493 (Tex. 1991),...................11

*T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218 (Tex.1992)..16

*Texas Dept. of Human Services v. Hinds,* 904 S.W.2d 629 (Tex.1995) ..21

*Volmich v. Neiman*, 02-12-00050-CV, 2013 WL 978770 (Tex. App.—Fort Worth Mar. 14, 2013, no pet.) ............................................................28

*Whiteside v. Griffis & Griffis, P.C.,* 902 S.W.2d 739 (Tex. App.—Austin 1995, writ denied)...........................................................................11

*Wyrick v. Tillman & Tillman Realty, Inc.,* 03-00-00061-CV, 2001 WL 123877 (Tex. App.—Austin Feb. 15, 2001, no pet.) .......................29, 30

*Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143 (Tex. 2015).. 22, 23, 27

## RULES

TEX. R. CIV. P. 278 ..........................................................................21

# ARGUMENT

**A. The trial court erred by failing to declare the June 18, 2103 contract for the sale of the collection for $90,000—including Medals of Honor of Honor—void because a part of the consideration (the Medals of Honor) was illegal and because there was no meeting of the minds as to buying the collection without the Medals of Honor.**

The <u>only contract</u> at issue is the parties' June 18, 2013 contract for $90,000. The Guidrys' only theory at trial was that the June 18 contract for Neal to pay $90,000 did <u>not</u> include Congressional Medals of Honor. The jury did not find that Neal agreed to buy the collection without the Medals of Honor. There was <u>no severable agreement</u> for Neal to pay for the remainder of the collection without the Medals of Honor. Because a part of the consideration for the only actual agreement made by the parties was the Medals of Honor that are illegal to sell, the trial court erred by failing to declare the contract void.

**1. Question 1 was not "immaterial" and the jury's answer is supported by the evidence.**

Did the parties include the Medals of Honor in their contract for the sale of "military medals" that were "already received by [Neal] on and around May 19th, 2013." It was, as Mrs. Guidry put, "a he said/he said

case." (RR3 52). This disputed question of fact was submitted to the jury. In Question 1, the jury was asked: "Were the Congressional Medals of Honor sold by Guidry to Neal and memorialized in the Contract dated June 18, 2013?" (CR 347).  The jury answered, "Yes." (*Id*).

The Guidrys somewhat perfunctorily argue that Question 1 was immaterial because "[w]hether a contract provision is illegal is, by its very nature, a question of law."  This argument merely begs the question: what were the terms of the contract?

The parties' written contract provides that "Henry Neal has agreed to pay to Wayne Guidry $90,000.00 for the purchase of <u>items already received by him</u> on and around May 19th, 2013 […] includ[ing] but are not limited to: […] <u>military medals</u> …" (RR7 at 5 (PX1) (emphasis added). First, even the Guidrys admit (as they must) the contract (they wrote) does not specifically list <u>any</u> items covered by the contract but only provides general categories (such as "military medals"). (RR3 67-68, 94, 224).   Second, the Medals of Honor were indisputably among the "military medals" that were "already received by [Neal] on and around May 19th, 2013." (RR3 88, 224).

It was also undisputed that Guidry showed the Medals of Honor to Neal as part of the collection on at least two occasions before Neal agreed to buy the collection. (RR3 190, 211).  There was yet additional evidence that the parties did include the Medals of Honor in their June 18 Contract:

> [Q.] [Y]ou contend that the Congressional Medals of Honor were purchased as a part of the collection; correct?
>
> A [Neal:] *Yes, they were*.

(RR3 93; see also RR4 272 (Q.  And including the Congressional Medals of Honor? A [Neal:] Yes.”); RR3 107-108 (Neal: “I didn't discover until later that things (including the Medals of Honor] had been conveyed to me [by Guidry] that were illegal to convey); RR3 169 (Neal: “(“T]he medals that I can't possess, I can't own, I can't resell <u>are part of this sale, [and] were conveyed to me</u> as part of the sale.”).

> Verburgt: “He [Guidry] said that these were Congressional Medals of Honor […]  and it was part of his inheritance that was being sold with everything. […] He was telling us that they could be worth between five and six, maybe $7,000 each[.]

(RR4 181).

> Q. At any time on May 19th, did Mr. Guidry or Mrs. Guidry tell you that the Congressional Medals of Honor were a gift or being thrown in or being – not part of the sale?

3

A. [Verburgt:] No. […] They were never a gift to anybody. […] They were part of the collection. […] It was all part of the sale that Neal negotiated with [Guidry.]"

(RR4 193; *see also* RR3 69 ("Q Were you ever told [the Medals of Honor] were a gift to you? A. [Neal:] No."); RR4 200 (Q. Did anyone mention [the Medals of Honor] were going to be gifted if he bought the rest of the collection? A. [Verburgt:] No.)).

Whether a contract is ambiguous is a question of law. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Once a contract is found to be ambiguous, the interpretation of the contract becomes a fact issue." *Royal Maccabees Life Ins. Co. v. James,* 146 S.W.3d 340, 346 (Tex. App.—Dallas 2004, pet. denied); *see also Karns v. Jalapeno Tree Holdings, L.L.C.,* 459 S.W.3d 683, 690 (Tex. App.—El Paso 2015, pet. denied) ("If the parties' intentions as expressed in the document are indefinite and unclear, ambiguity exists, and the issues of contract formation and intent to be bound become questions of fact.").

Having properly determined the June 18 contract was ambiguous, the trial court allowed both sides to present extrinsic evidence; *i.e.* the Guidrys' parole evidence claiming the Medals of Honor were a "gift" and Neal's evidence the Medals of Honor were not only among the "military

4

medals" that were "received by him on and around May 19th, 2013" but had been marketed to him as particularly valuable parts of the collection. Question 1 was properly submitted and was hardly "immaterial."

**2.     The jury found that "the Congressional Medals of Honor [were] sold by Guidry to Neal and memorialized in the Contract dated June 18, 2013."**

The Guidrys also argue "[t]he term 'military medals' is subject to a construction that renders the Contract legal." But the question is not whether the parties *could have* made an entirely lawful contract (of course they could have), the question is whether they did in fact make a contract that was in part unlawful.

As just discussed, the jury was properly asked to resolve whether the "the Congressional Medals of Honor [were] sold by Guidry to Neal and memorialized in the Contract dated June 18, 2013." *See, KSWO Television Co., Inc. v. KFDA Operating Co., LLC,* 442 S.W.3d 695, 704 (Tex. App.—Dallas 2014, no pet.) ("When a contract is ambiguous, 'a fact finder should resolve the meaning.'"), quoting *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 809 (Tex. 2009). Furthermore, there was clearly sufficient evidence to support the jury's answer to Question 1. (*See* Appellant's Brief at 46-49).

The jury properly decided a question of fact: whether the contract included the Medals of Honor. The jury's answer gave rise to a question of law (that the trial court <u>wrongly</u> decided): whether the contract is void.

**3.    There was no agreement to purchase the collection minus the Medals of Honor (and, accordingly, no agreement to do so for $78,000).**

Before the jury returned its verdict, the trial court properly understood the significance of asking Question 1. At the charge conference, the court noted **"[*t*]*here's no way in this contract to have separated out the Congressional Medals of Honor*** or the skulls and then find an enforcement of the contract because we don't have specific numbers or items broken down." (RR5 90).

In answer to Question 1, the jury found that the illegal-to-sell Medals of Honor <u>were included.</u> Accordingly, "there's no way in this contract" to sever the Medals of Honor and yet find an enforceable contract remaining "because we don't have specific numbers or items broken down." More importantly, there is no evidence of any enforceable contract for Neal to buy the rest of the collection without the Medals of Honor. The only agreement was to pay a lump sum of $90,000 for the entire collection including the Medals of Honor.

6

The post-verdict stipulation that the Medals of Honor were "worth" $12,000 has nothing to do with the parties' June 18, 2013 Contract. (RR4 283). "Severability of the contract is determined by the intent of the parties as evidenced by ***the language in the contract***." *In re Kasschau,* 11 S.W.3d 305, 313 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (emphasis added), citing *Montgomery v. Browder*, 930 S.W.2d 772, 778-79 (Tex.App.—Amarillo 1996, writ denied); *see also McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex.App.--Austin 1979, writ ref'd n.r.e.). Courts cannot make new contracts between the parties, but must enforce the contracts ***as written."*** *Royal Indemnity Company v. Marshall,* 388 S.W.2d 176, 181 (Tex. 1965) (emphasis added). Furthermore, the stipulation as to value is irrelevant to "the subjective intent of the parties … at the time they entered into the contract." *Daimler Chrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 179 (Tex. App.—Fort Worth 2012, no pet.). Surely a party can stipulate to the value of a thing without agreeing to buy it. More specifically, to stipulate as to a value for the Medals of Honor is not at all the same thing as stipulating that Neal would have bought the rest of the collection for $78,000 without those Medals. There was no such stipulation and no such evidence. Instead, the

June 18, 2013 Contract (the <u>only</u> contract at issue) is clearly an agreement to buy everything in the collection for a lump sum. Under the circumstances, to change both what is being bought and what it will cost is to impose an agreement on Neal that he never made.

Neither party testified to the existence of an agreement to pay $78,000 for the collection minus the Medals of Honor. The relevant positions can be summarized as:

—<u>Neal</u>: I will pay $90,000 for the whole collection including Medals of Honor.

—<u>Guidry</u>: I will accept $90,000 but Medals of Honor are not included.

—<u>Court's Judgment</u>: Neal will pay $78,000 for the collection excluding the Medals of Honor.

An enforceable contract requires (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex.App.--Houston [14th Dist.] 2012, pet. denied). The court's judgment fails to clear the first hurdle. There is nothing to suggest Neil ever <u>offered </u>to buy the collection without Medals of Honor. For their part, the Guidrys

8

insisted the only agreement was for Neal to pay <u>$90,000 without</u> the Medals of Honor. In short, there is no evidence of any offer at $78,000, much less an acceptance at $78,000, and <u>certainly not any meeting of the minds at $78,000</u>.

Where a part of the consideration for an agreement is illegal, the entire agreement is void whenever, as here, the contract is entire and indivisible. *In re Kasschau,* 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, no pet.) In *In re Kasschau*, the question was whether the court could enforce a divorce settlement even though one of its provisions called for an illegal destruction of certain phone recordings. Although the husband argued the illegal provision was not at all "essential" to the broader settlement agreement, there was no way to know whether the wife would have settled or what the other terms would have been without the illegal provision. *Id.*

In this case, would Neal have bought the collection without the Medals of Honor? <u>There is no evidence that he would have done so</u>. Would the parties have agreed a price to $78,000 if the Medals of Honor were not included? According to Guidry, he agreed to sell the collection

without the Medals of Honor for $90,000. And, Neal never offered or agreed to buy the collection without Medals of Honor at any price.

In *Cox Feedlots, Inc. v. Hope,* 498 S.W.2d 436, 438–39 (Tex. App.--San Antonio 1973, writ ref'd n.r.e.), the court could have easily severed an illegal ten percent commission and enforced the remainder of the contract. In fact, in that case (and unlike here), the agreement contained a savings clause:

> … the entire contract should not be voided, in that the contract contains a 'savings clause' wherein the parties agreed '. . . that if any portion of this Contract is illegal, the remainder of the Contract shall not be affected thereby.' He also asserts that *there is other consideration* in that Hope agreed to give Cox Feedlots first option on the use of his equipment.

Id. at 438. The court rejected the broker's argument to sever and enforce the remainder of the agreement:

> This covenant [for the ten percent commission] is obviously a part of the consideration for Cox Feedlots' giving Hope the hauling contract. […] Since the illegal rebate formed a part of the consideration for Cox Feedlots' promise to give Hope first option on all hauling, it cannot be said that such illegal transaction was not any part of Hope's cause of action. […] Furthermore, there is no way of separating this illegal consideration from the legal portion of same. Therefore, the court will not grant its aid in enforcing said contract, but will leave said parties where it finds them.

*Id.* at 439 (emphasis added).

If the Guidrys had wanted to establish the Medals of Honor were merely "incidental" to the parties' contract, the Guidrys should have pled, proven and obtained jury findings to support such a theory. *See* Appellant's Brief at 53-55 citing *Rogers v. Wolfson,* 763 S.W.2d 922 (Tex. App.—Dallas 1989, writ denied) (whether illegal portion could be severed presented a question of fact for factfinder); *Whiteside v. Griffis & Griffis, P.C.,* 902 S.W.2d 739, 742 (Tex. App.—Austin 1995, writ denied) (same) The Guidrys did not ask the jury anything along the lines of whether Neal would have bought the collection even if Medals of Honor were not included. *See Whiteside,* 902 S.W.2d at 742 ("The issue is whether the parties would have entered into the agreement absent the illegal parts."). The Guidrys, as plaintiffs, had the "burden to obtain affirmative answers to jury questions as to the necessary elements of his cause of action." *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex. 1991), quoting *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990), citing Tex.R.Civ.P. 279

Instead, the jury here was asked only whether the Medals of Honor were part of Neal's agreement to pay a $90,000 lump sum (the <u>only contract</u> between the parties), and the jury found the Medals of Honor

11

were included. (CR 347). "[S]elective enforcement of the contract, as argued for by [the Guidrys], would result in a new and different contract not intended by the parties." *McFarland,* 589 S.W.2d at 524. "Courts are created for the purpose of enforcing contracts, if they be legal, and *denying enforcement, if they be illegal, but they cannot make contracts for parties*." *Magee v. I. & G. N. Wood & Coal Co.*, 269 S.W.2d 498, 505 (1954) (emphasis added).

Because the Guidrys' claims are based solely on a contract the jury found did include Medals of Honor that are indisputably illegal to sell, the judgment below should be reversed. Judgment should be rendered in favor of Neal that the Guidrys take nothing on their claims.

**4. Unlike cases cited by the Guidrys, the trial court here did not construe the parties' agreement, it made a new one.**

The Guidrys quote the proper rule: "[a] contract illegal in part and legal to the residue is void as to all, when the parts cannot be separated; when they can be, the good will stand and the rest fall." *Raywood Rice Canal & Milling Co. v. Erp*, 146 S.W. 155, 159 (Tex. 1912) (emphasis added). But the Guidrys then suggest the illegal Medals of Honor can be separated from the parties' contract and that a valid contract will remain (for whatever is left, at a new price).

12

The Guidrys rely on *Redgrave v. Wilkinson*, 208 S.W.2d 150 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.) and *Dietz v. Van Nortwick*, 188 S.W.2d 590, 590-91 (Tex. Civ. App.—Galveston 1945, writ ref'd). Neither of these cases involve a sales contract to pay <u>a lump sum for everything</u> in a collection. These cases do not support the judgment below.

*Redgrave* has nothing in common with this case beyond a party raising illegality. The case involves the winding down of a partnership. Redgrave and Wilkinson had first entered into a partnership for the purpose of operating illegal gaming devices. *Redgrave,* 208 S.W.2d at 152. "They were successful in this business venture and in 1942 they invested some of their profits in cigarette vending machines and operated such business under the assumed name of the Central Cigarette Service on the basis of equal partners." *Id.* "[T]he operation of the cigarette vending machines was in all things legal and such operation created new property rights which Redgrave and Wilkinson shared equally." *Id.* Furthermore, "<u>the cigarette business was separated</u> from the gaming business conducted by the partnership." *Id.* (emphasis added). As part of an accounting and division of the partnership, the court held that Redgrave was entitled to one half of the partnership's cigarette vending machines.

*Id.* The court rejected Wilkinson's contention that Redgrave—who was only trying to get his half of his partnership's machines—was attempting to enforce an illegal contract (because they had used proceeds from their gaming business to initially buy the machines). The court found that nothing illegal was required for Redgrave to recover his one-half of the machines. *Id.* This division of property owned by former `partners in *Redgrave* (who had, among other things, made sure their "cigarette business was separated from the gaming business") simply does not speak to the present case.

The *Dietz* facts may be closer, but the case is also no help for the Guidrys. Unlike the present case, *Dietz* provides an example of a situation where a sales contract is severable. 188 S.W.2d at 590. The case involved illegal gaming devices called "punch boards." *Id.* Specifically, Dietz and Van Nortwick "entered into a written contract by which Dietz agreed to buy certain described beer and pay therefor the sum of $7,399.90; and to buy certain described punch boards (which are gaming devices) and pay therefor the sum of $4,981.46[.]" *Id.* "The lawful part of the contract is to the unlawful contract as $7,399.90, the contract price of the beer, is to $4,981.46, the contract price of the gaming devices." *Id.* at

593. After severing "the contract price of the gaming devices," the court found that "appellant should be adjudged […] $7,399.90, [for the beer] and be denied recovery of the portion which corresponds to $4,981.46" for gaming devices. *Id*. The unlawful contract price for gaming devices could be severed from the lawful part because the parties had entered into a severable agreement from the start: "Dietz agreed to buy certain described beer and pay therefor the sum of $7,399.90; and to buy certain described punch boards […] and pay therefor the sum of $4,981.46[.]" *Id*. at 590.  In the present case, there was only an agreement to buy the entire collection for a single lump sum.

Here, the illegal part (the Medals of Honor) is a part of the consideration for the agreement to pay $90,000. There is no evidence that Neil ever agreed to buy only other parts of the collection (*i.e.*, without the Medals of Honor), much less that he agreed to do so for $78,000.  Indeed, there is not even any evidence the Guidrys agreed to sell the collection for $78,000 (the Guidrys claimed the agreement was for $90,000 without Medals of Honor). This case is not *Dietz*.

The court in *Dietz* refused to enforce the agreement "to buy certain described punch boards [for] $4,981.46" and enforced only the remaining

agreement "to buy certain described beer  [for] $7,399.90."  In the present case, there was no agreement between the parties to pay one sum for Medals of Honor and one sum for the rest of the collection (assuming Medals of Honor were not included). The trial court simply created a new agreement that neither party claimed during trial was the agreement. While "Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms." *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 766 (Tex. App.—El Paso 2004, no pet.); *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *Argo Data Res. Corp. v. Shagrithaya,* 380 S.W.3d 249, 274 (Tex. App.--Dallas 2012, pet. denied) ("Although Texas courts favor validating contracts, we may not create one where none exists.").

## 5.    The trial court's ruling on attorney's fees should be reversed and remanded.

As the contract should be declared void, Neal should recover attorney's fees pursuant to the Declaratory Judgment Act. (CR 190). Because the judgment as to the enforceability of the contract should be reversed, the decision below awarding fees to the Guidrys should also be reversed and remanded to reconsider fees. *See, e.g. Double Diamond, Inc.*

*v. Saturn*, 339 S.W.3d 337, 347 (Tex. App.—Dallas 2011, pet. denied) citing *Hartsell v. Town of Talty,* 130 S.W.3d 325, 329, 330 (Tex.App.-Dallas 2004, pet. denied).

**B.   Even assuming *arguendo* the contract is not void for illegality, Neal's defense of fraud in the inducement entitles him to judgment or at least a new trial.**

>   **1.   By tendering a proper question and obtaining an adverse ruling before the charge was read to the jury, Neal preserved charge error.**

The Guidrys correctly note that the trial court instructed the attorneys they would state "formal" objections to the charge after the charge had been read to the jury. Nonetheless, <u>before</u> the charge was read to the jury, Neal tendered, in writing, his proper requested question on the affirmative defense of fraud/misrepresentation (see CR 307, 319), and Neal obtained an adverse ruling on that request. (RR4 310).

>   THE COURT:  […] Now on <u>the proposed question about -- this is I guess the affirmative defense based on a false representation or concealed material facts</u>?
>   MR. MORRIS: Yes, Your Honor.
>   THE COURT: All right. <u>The request</u> for this instruction [sic] <u>is denied.</u>

(RR:4 310 (emphasis added)). The Court did not treat this conference are merely "preliminary," as suggested by the Guidrys.  (*See, e.g., id.* at 312: "THE COURT: Yeah, your -- your objections are noted. We're doing this

all on the record.").[1] Neal preserved error with regard to his fraud affirmative defense to the contract.

"There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). "The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle." *Id.* Here, Neal made the court aware of the specific affirmative defense question he believed he was entitled to submit and that the jury should be asked, and Neil obtained a ruling from the trial court on his requested question. Neal clearly met the test. *Id.; see also, e.g. In re Stevenson,* 27 S.W.3d 195, 201 (Tex. App.—San Antonio 2000, no pet.) (error preserved when question was submitted and refused during "informal" charge conference).

There is an additional and alternative reason Neal preserved error. This is <u>not</u> a case where <u>the parties agreed</u> to submit objections after the

---

[1] The trial court then stated that "for convenience sake, in the morning what I may do is read the Charge, send the jury out to deliberate and then put any formal objections that you want to go further on …" (*Id.*).

18

charge was read and the court consented to the parties' agreement. *See, e.g., Missouri Pac. R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973) ("Having been parties to the agreement, neither plaintiff nor defendant is in a position to complain ..."); *Methodist Hosps. of Dallas v. Corp. Communicators, Inc.,* 806 S.W.2d 879, 885 (Tex.App.--Dallas 1991, writ denied) (involving "[a]n agreement of the parties"). Rather, the trial court here instructed the parties that they could state their objections after the charge was read and the parties responded by ensuring that their objections to the charge were not being waived. (RR5 42). Shortly before the charge was to the jury, the following occurred:

> THE COURT: All right. Bring in the jury.
> MR. YOUNG [Counsel for Guidrys] : While we're waiting for them to come in, I do need to make formal objections to this Charge. I mean this is just part of the process that we do. When it's finally -- the final Charge is submitted, you make formal objections.
> I know it's not going to change this Court's ruling and so, because of that, I don't mind making them after the arguments; however, **I do want to reserve my ability to do that and I haven't waived that**.
> THE COURT: All of your previous objections are carried forward to this point and you can memorialize them on the record after the jury goes out to deliberate.
> MR. YOUNG: **And I can make formal objections at that point and I haven't waived anything?**
> THE COURT: **Correct.**
> MR. MORRIS [Counsel for Guidrys]: And just so you can say on

19

the record, **good for the goose, good for the gander**?
THE COURT: **Absolutely. Both parties will be allowed to object to the Charge,** which means it must be a good Charge if both parties are objecting to it.

(RR5 42 (emphasis added). Accordingly, during the time allotted by the judge for him to do so, Neal had the trial court formally sign the requested question on Neal's affirmative defense of fraud/misrepresentation as "denied." (RR5 94-95; RR8 359 (DX 13)).

Neal did not fail to preserve error under these circumstances. If the Guidrys had disliked the judgment below, the Guidrys would no doubt be (properly) taking this very position. Before the charge was read to the jury, the parties made clear to the trial court that they were entitled to "make formal objections to this Charge," as "part of the process that we do" is "[w]hen the final Charge is submitted, [the parties] make formal objections." (RR5 42). The trial court ruled that <u>both parties</u> were not waiving their objections. (*Id*.) The Texas Supreme Court "has repeatedly emphasized its holding in connection with the timing of objections and the wording of requests, asserting that we should concern ourselves with common sense and not promote form over substance." *In re Stevenson,* 27 S.W.3d at 201*, citing Dallas Market Center Development Co. v. Liedeker,* 958 S.W.2d 382, 386 (Tex.1997); *Alaniz v. Jones & Neuse, Inc.,* 907

20

S.W.2d 450, 451–52 (Tex.1995); *Texas Dept. of Human Services v. Hinds,* 904 S.W.2d 629, 637–38 (Tex.1995).

Again, Neal had already adequately preserved error by tendering his requested question and obtaining an adverse ruling by the trial court before the charge was read. (CR 319; RR4 310). *See State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992); *In re Stevenson,* 27 S.W.3d at 201. However, even assuming *arguendo* that that was insufficient for any reason, under the circumstances herein, the trial court's subsequent "formal" signed denial of the requested question at issue was not "untimely," even though the charge had been read. Charge error was preserved.

## 2. Neal's tendered question was substantially correct.

Neal's proposed question on his defense of being induced into the contract by misrepresentation or material omission was "substantially correct." TEX. R. CIV. P. 278. "'Substantially correct' does not mean that the instruction is perfect." *BNSF Ry. Co. v. Epple*, 07-15-00355-CV, 2016 WL 7010581, at *3 (Tex. App.--Amarillo Nov. 30, 2016, pet. denied), quoting *Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex. 1987). Rather, it satisfies the test when it is "in substance and in the

main correct, and ... not affirmatively incorrect." *Placencio,* 724 S.W.2d at 21, quoting *Modica v. Howard,* 161 S.W.2d 1093 (Tex. Civ. App.–Beaumont 1942, no writ); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.,* 744 S.W.2d 170, 182 (Tex. App.--Waco 1987, writ denied).

Using snippets out of context from cases examining differences in damages recoverable for a cause of action for common law fraud as distinguished from a cause of action for fraudulent inducement, the Guidrys argue that Neal's question was inadequate because it did not ask about "a promise of future performance made with no intention to perform." First, Neal was not submitting a cause of action for any sort of damages but rather an affirmative <u>defense.</u> *See, e.g., Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200, 211 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (party established fraudulent inducement as a <u>defense</u> by jury's answer to fraud question). Second, the Guidrys are misreading the cases.

The Guidrys primarily rely on <u>part of</u> a sentence from *Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143, 153 (Tex. 2015): "Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with

22

no intention of performing at the time it was made." *Id.* The Guidrys suggest that "a promise of future performance made with no intention of performing" is a separate, required element of fraudulent inducement regardless of the facts of the case. But the Guidrys ignore *Zorrilla's* statement *in the same sentence* that fraudulent inducement "shares <u>the same elements</u>" as common law fraud. *Id.* (emphasis added). Furthermore, the Guidrys ignore that *Zorrilla* <u>affirmed</u> an award of damages for fraudulent inducement when the jury question in that case specifically did <u>not require</u> a finding of "a promise of future performance made with no intention of performing at the time it was made" as a required element. *See id.* Rather, the jury was given an alternative:

> In the present case, the fraud liability question submitted to the jury included all the elements of a common-law fraud claim and defined "misrepresentation" to mean "a false statement of fact" **_or_** "a promise of future performance made with an intent, at the time the promise was made, not to perform as promised."

*Id.* at 153 (emphasis added). The Supreme Court held that "based on the measure of damages submitted to the jury, the only viable fraud claim is fraudulent inducement" and then affirmed the jury's award of those damages based on the above-quoted liability question. *Id.* at 153-154.

23

Antecedent fraud of many sorts is a defense to a contract. *See, e.g.,*

*Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.,* 896 S.W.2d 156,

162 (Tex. 1995) ("A buyer is not bound by an agreement to purchase

something 'as is' that he is induced to make because of a fraudulent

representation or concealment of information by the seller."). The

required elements of the defense of fraudulent inducement as stated by

the Texas Supreme Court are:

> To prove that Plank fraudulently induced him to sign the
> release, Westergren had to establish that (1) Plank "made a
> material representation"; (2) Plank's "representation was
> false and was either known to be false when made or made
> without knowledge of its truth"; (3) Plank's "representation
> was intended to be and was relied upon by the injured party";
> and (4) Westergren's "injury complained of was caused by the
> reliance."

*Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423 (Tex. 2015),

quoting *In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 678 (Tex. 2009)

(citing *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex. 1997));

*Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex. 1997).

The court did not mention "a promise of future performance made with

no intention of performing at the time it was made" as being an additional

distinct and required element.

The Fifth Circuit has recently stated:

The elements of fraudulent inducement are the same as the elements for fraud, "plus the added element that the fraud related to an agreement between the parties." *In re VNA Inc.*, 403 S.W.3d 483, 487 (Tex. App.—El Paso 2013, no pet).

> Under Texas law, the elements of fraud are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015). A fraudulent inducement claim can also be based on the failure to disclose a material fact. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

*Johnson v. World All. Fin. Corp.,* 830 F.3d 192, 198 (5th Cir. 2016).

In affirming a jury finding of fraudulent inducement, the Tyler Court of Appeals noted:

> Fraudulent inducement is a particular species of fraud that arises only in the context of a contract. *Nat'l Prop. Holdings v. Westergren*, 453 S.W.3d 419, 423 (Tex. 2015). A party asserting that it was fraudulently induced into entering into a contract must show that (1) the other party made a material representation, (2) the representation was false and was either known to be false when made or made without knowledge of the truth, (3) the representation was intended to be and was relied upon by the injured party, and (4) the injury complained of was caused by the reliance. *In re Int'l*

*Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009). *Int'l Bus. Machines Corp. v. Lufkin Indus., Inc.,* 12-15-00223-CV, 2017 WL 2962836, at *4 (Tex. App.—Tyler July 12, 2017, no pet.). Again, these courts do not mention "a promise of future performance made with no intention of performing at the time it was made" as being an additional distinct and required element.

The Guidrys also suggest that Neal's proposed question fails to establish the elements of fraud "as they relate to the Contract." However, in reality, the tendered question begins by stating, "Failure to comply by HENRY NEAL is excused if …" and concludes by asking "Was HENRY NEAL'S failure to comply excused?" (RR8 359 (DX 13). As was done with Neal's affirmative defense question regarding duress, the jury would have known that "failure to comply" means "to comply with the June 18, 2013 Agreement." (CR 347). The question thus properly established the elements of fraud "as they relate to the Contract."

Furthermore, the June 18, 2013 Contract was the *only issue* at trial raised by either party. The June 18, 2013 Contract was the *only subject* of the entire Court's Charge. Additionally, cases mentioned above that involve an affirmance of jury findings for fraudulent inducement, were

based on jury questions that tracked the generic elements of fraud without specifically mentioning the contract at issue in the case. *See Zorrilla,* 469 S.W.3d at 152-153; *Anderson, Greenwood & Co*, 44 S.W.3d at 211. When, as here, the contract is the issue at trial, there is no need to do more. Indeed, by specifically inquiring about Neal's "failure to comply …" with the contract, Neal's question is more specifically "related to the contract" than the questions in cases such as *Zorrilla* and *Anderson, Greenwood & Co.*

Neal's proposed question included the required elements and was substantially correct. The question was ""in substance and in the main correct, and … not affirmatively incorrect." *Placencio,* 724 S.W.2d at 21. The trial court erred by refusing to submit the question.

> **3. To merely say a buyer conducted his own "investigation" into some matters does not absolve the seller from misrepresentations unrelated to any such "investigation."**

Nothing has changed since this court's pronouncement that "an independent investigation of matters that eventually culminate in a contract does not as a matter of law defeat a right to rely on allegedly false representations." *Carruth v. Allen*, 368 S.W.2d 672, 679 (Tex.App.--Austin 1963, no writ). Nonetheless, the Guidrys persist in arguing that

27

Neal's fraudulent inducement defense and DTPA claim must fail because of evidence that Neal began "investigating" some aspects of the collection before signing the contract on June 18, 2013.

Although buyers who discovered the very problem that forms of their basis of their later suit can be barred[2], there is no rule that any and every "independent investigation" by a buyer necessarily precludes the buyer from showing detrimental reliance on a seller's misrepresentations or material omissions. *See, e.g., Volmich v. Neiman*, 02-12-00050-CV, 2013 WL 978770, at *8 (Tex. App.—Fort Worth Mar. 14, 2013, no pet.) ("We do not hold that an independent inspection will always bar DTPA and fraudulent inducement claims."). If you kick the truck's tires or even take a quick test drive, have you conducted an "investigation" such that you are now barred from raising a fraud claim based on false fuel efficiency claims? Of course not.

The actual rule is that one cannot recover for fraudulent representations when he knows the representation is false, or when he

---

[2] *See, e.g., Chitsey v. Nat'l Lloyd's Ins. Co.,* 698 S.W.2d 766, 769 (Tex. App.--Austin 1985), aff'd sub nom., 738 S.W.2d 641 (Tex. 1987 ("This fact was also noted in the inspector's report. Accordingly, National Lloyd's possessed this information before it wrote the coverage.").

has <u>relied solely on his own investigation</u> rather than on the representations of the other party. (*See* Appellant's Brief at pp. 69-70 and cases cited therein) If the buyer has not even investigated the particular representation that turns out to be fraudulent, the buyer is obviously not relying solely on his "investigation" and may still be able to show reliance on the seller's misrepresentation.

The Guidrys mistakenly rely on a case from this Court which provides yet another illustration of the rule that there is no absolute bar just because the buyer conducts an "investigation." In *Wyrick v. Tillman & Tillman Realty, Inc.*, 03-00-00061-CV, 2001 WL 123877 (Tex. App.—Austin Feb. 15, 2001, no pet.), the court said:

> Tillman Realty, in its third ground for summary judgment, argued that Wyrick is deemed to have relied upon her own personal investigation that was free and unhampered. Tillman argues on appeal, therefore, that he did not have a duty to Wyrick with respect to the railroad right-of-way or the meat-processing plant that would support a cause of action against Tillman Realty. Wyrick concedes that she did not perform an investigation of the area where the right-of-way or meat-processing plant are located. She argues, however, that a broker has a duty to disclose all material facts that would not be discovered by the exercise of ordinary care and diligence, which, at a minimum, she performed.
>
> The rule is that where a person makes his own investigation of the facts, he cannot sustain an action of misrepresentation made by others. [...] According to Wyrick's affidavit, she

29

spent time driving around the neighborhood and the town at night after work. One evening, she returned to visit New Braunfels and the neighborhood with a friend, and they drove around together looking at the area. From the record, the evidence tends to show that the railroad tracks were difficult to discover; many of them had been torn up and covered with asphalt. When Wyrick did visit the neighborhood, it was in the evening and often dark outside. The summary judgment **evidence does not prove conclusively that Wyrick should have discovered the right-of-way and the meat-processing plant during her drives around the neighborhood.** Tillman Realty has not proven the factual premise of **the rule deeming one to have *relied on one's own investigation***. Wyrick's fifth point of error is sustained.

*Wyrick*, 2001 WL 123877, at *8 (emphasis added).

In the present case, Neal's fraud in the inducement defense is supported by evidence of Guidry's material misrepresentations regarding: (1) whether the Medals of Honor were quite valuable *or* instead illegal to sell; and (2) whether the "Indian artifacts" had been personally dug up by Guidry's father and family at known "Indian locations" which could be documented by family record and photos *or* instead 30-40% had been purchased by Guidry's father from "dealers" without records of source or documentation of authenticity. **There is no evidence of any "independent investigation" *at all* by Neal regarding either of *these issues* before the June 18 contract, much less any evidence that Neal relied "solely" on his own**

30

**investigation as to either of his issues.** Rather, all evidence is to the contrary. (Appellant's Brief at 59-72).

First, as to the legality of selling Medals of Honor, Neal agreed to buy the collection including the Medals of Honor for $90,000 on June 18, 2013 still believing "the representations made by the Guidrys were ac- -- were factual," and "didn't discover until later that things had been conveyed to [him] that were illegal to convey." (RR3 107-108). Neal only learned it was illegal to sell Medals of Honor in July 2013. (RR3 158).

As to the source and origin of the collection, there is no evidence Neal found out that Guidry's father had purchased many of the items until this lawsuit. (RR4 at 272-274; *see also* RR4 at 165-167 ("I never heard that. That's the first time I've heard that.")). Back when signing the June 18, 2013 contract, Neal suspected only "a few of the pieces" might be "retips"—not that Guidry's father had purchased 30-40% from dealers and that Guidry had "no clue" where those dealers got them items. Of course, even then, Guidry was still defending the collection and "strongly disagreed" that arrowheads were not real. Guidry certainly did not disclose to Neal the true source of 30-40% of the collection.

There is no evidence he had even investigated the relevant issues much less was relying <u>solely</u> on his own such investigation. Neal's fraud in the inducement defense does not fail just because there was some evidence that Neal began an investigation of sorts before signing the contract.

Neal's proposed question on its affirmative defense that performance of the contract was excused by Guidry's misrepresentation or concealment of material facts should have been submitted to the jury. (RR8 359 (DX 13)). The defense was supported by pleadings and by evidence at trial. (Indeed, the jury answered "Yes" in response to Question 6 based on the same facts. (CR 359)). The defense would have established a bar to the Guidrys' claim for damages. It was an abuse of discretion and error to refuse to the submit the question, and, as a result, the judgment should be reversed and the case remanded for a new trial. *See, e.g., R.R. Comm'n of Texas v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 576 (Tex. 2016) (remanding for new trial where trial court failed to submit jury question on affirmative defense).

## CONCLUSION AND PRAYER

The judgment below should be reversed. Judgment should be rendered for Appellee and the question of attorney's fees remanded to the trial court. Alternatively, the entire case should be remanded for a new trial.

Respectfully submitted,

By: /s/ Michael J. Morris
    Michael J. Morris

Texas Bar No.  24002651
Morris & Bermudez, pllc
299 W. San Antonio St.
New Braunfels, Texas 78130
Tel: (830) 626-8779
Fax: (830) 627-0890
mmorris@mmbiblaw.com

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

This brief on the merits complies with the word limit of TEX. R. APP. P. 9.4 because it contains 7,204 words, excluding the parts of the brief exempted by TEX.R. APP. P. 9.4(i)(1).

*/s/ Michael J. Morris.*
Michael J. Morris


## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing brief has been electronically served concurrent with the electronic filing of the brief on this 2nd day of January, 2018, on lead counsel of record for Appellees: Mr. Kevin Young, Prichard Young LLP, 10101 Reunion Pl Ste 600, San Antonio, TX 78216-4162, at kyoung@prichardyoungllp.com.

*/s/ Michael J. Morris.*
Michael J. Morris