**GLENN THURMAN, INC, Appellant,**

v.

**MOORE CONSTRUCTION, INC., Appellee.**

No. 12–95–00254–CV.

Court of Appeals of Texas, Tyler.

March 31, 1997.

Paul E. Ridley, Dallas, for appellant.

Stephen D. Harrison, Dwayne Hoover, Fort Worth, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Glenn Thurman, Inc. ("GTI"), Appellant, appeals the trial court's judgment in favor of Moore Construction, Inc. ("Moore"), Appellee, on GTI's breach of contract counterclaim. Appellant generally alleges that the trial court erred in submitting jury questions which "tainted" the jury in regards to its counterclaim, in not finding for GTI on several issues as a matter of law, in failing to grant GTI's Judgment *Non Obstante Veredicto* ("JNOV"), in failing to submit certain jury questions and instructions, and in sub-

mitting a jury question based upon common law contract theory rather than the Uniform Commercial Code ("U.C.C."). We **reverse the judgment of the trial court and remand for a new trial.**

Moore and GTI entered into a contract whereby GTI would sell hot mix asphaltic concrete and prime coat to Moore, who was constructing a parking lot for Walmart in Gun Barrel City. After Moore completed the parking lot, Walmart informed the construction company that the asphalt was not within Walmart's specifications. The record shows that Moore wrote to GTI and requested a "correction of the defective pavement." When GTI did not respond, Moore wrote another letter stating that it was going to repair the parking lot and seek damages from GTI for the repairs. Moore replaced approximately one-third of the asphalt, and did not pay GTI for any of the asphaltic concrete, the prime coat, or freight delivery. Moore proceeded to sue GTI for breach of contract and violation of the Deceptive Trade Practices Act ("DTPA"). GTI countersued for payment under the contract and for *quantum meruit.* During the jury trial, the parties entered into a stipulation that if either party appealed, it would base its appeal only upon the charge, the verdict, or the judgment as it related to the verdict. The jury found for Moore on both its breach of contract and DTPA causes of action, but Moore elected to move for judgment on the DTPA violation. On GTI's counterclaim, the jury found that Moore breached its contract by failing to pay GTI, but that GTI's prior breach excused Moore's breach. The jury failed to find for GTI on its *quantum meruit* theory.

Before reviewing GTI's points of error in detail, we must ascertain if the parties' stipulation bars any or all of them from consideration by this Court. GTI complains of charge error in points one, two, four, five and six. Its points of error three, seven and eight aver that the trial court committed error in failing to find various elements as a matter of law. Its ninth point of error asserts that the trial court committed error by awarding Moore a windfall recovery contrary to the law, and in failing to grant GTI's

JNOV Motion and Motion for New Trial on this issue. And point ten claims that the trial court erred in failing to award GTI attorneys' fees, as found by the jury. The stipulation, as stated in the record, is as follows:

> Further, both parties agree that if either party elects to appeal, that the appeals would not be related to issues concerning sufficiency of the weight of the evidence or anything that has transpired during trial, or no evidence points. The issues would be related to the jury charge and the verdict, and that would be the limit of both parties' right to an appeal, if any.

> And ... to make sure this is a complete agreement, ... if we have the right to appeal the charge and verdict, we also need the right to appeal the Court's judgment on the verdict ... as it relates only to the charge and the verdict.

■ A stipulation constitutes a contract between the parties, and between the parties and the court. *First National Bank v. Kinabrew,* 589 S.W.2d 137, 142 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e). A stipulation may fix, limit, or modify the issues in a case. *Id.* Specifically, parties may enter into a binding stipulation that limits the issues on appeal. *See Missouri Pacific Railroad Co. v. Whittenburg & Alston,* 424 S.W.2d 427, 428 (Tex.1968). Such a stipulation will foreclose the appellate court from going behind the agreement in examining issues beyond those stipulated by the parties. *See id.; see also Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 754 (Tex.1993).

■ We overrule GTI's points three, seven and eight because they are based on evidentiary matters specifically barred by the parties' stipulation. Point nine fails to complain of the jury charge or the verdict and judgment on the charge; therefore, it also contravenes the stipulation, and we overrule it as well.

■ In its first two points of error, GTI alleges that two of Moore's breach of contract jury questions "tainted" the jury's answers to GTI's questions on its counterclaims. Although GTI objected to these questions before the charge was submitted to

the jury, it did not specifically complain that they would "taint" the remaining questions. Objections to the charge must be specific. The objection must clearly identify the error and explain the grounds for the complaint. TEX.R.CIV.P. 274; *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986). If the objection does not meet both requirements, it will not preserve error. *Id.* Because GTI was not specific and did not clearly explain its grounds, it failed to preserve error. We overrule points one and two.

GTI's point of error four complains that the trial court committed error in submitting Question No. 10, as well as the related instruction to the jury which GTI alleges misstated the law and was improperly worded. GTI further alleges that the court erred in entering judgment on the jury's finding on Question No. 10 and in failing to grant GTI's JNOV Motion on Question No. 10. Question Nos. 9 and 10, along with the jury's answers, read as follows:

*QUESTION NO. 9:*

Did Moore fail to comply with the terms of the Contract?

*ANSWER: Yes*

*QUESTION NO. 10:*

Was Moore's failure to comply excused?

*ANSWER: Yes*

You are instructed that failure to comply by Moore is excused by Thurman's previous failure to comply with a material obligation of the Contract.

You are further instructed that Thurman failed to comply with a material obligation of its Contract if:

(a) the materials were not reasonably uniform in quality; or

(b) the materials were not at all times up to standard.

GTI asserts that the jury question on "excuse" was reversible error because it reflects a common law contract defense, rather than a U.C.C. defense. Moore argues in its reply that the trial court did not commit error in submitting the affirmative defense of "excuse" to the jury, since GTI waived the complaint by failing to plead, prove, or request

appropriate jury questions on a U.C.C. cause of action.

When parties enter into a contract for the sale of goods, Chapter 2 of the Texas Business and Commerce Code controls the conduct of the parties. TEX.BUS. & COM.CODE ANN. § 2.102 (Tex.UCC) (Vernon 1994).[1] Where the U.C.C. applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedure set forth in the U.C.C. *Pacific Products, Inc. v. Great Western Plywood, Ltd.*, 528 S.W.2d 286, 291 (Tex.Civ. App.—Fort Worth 1975, no writ).

In a contract for the sale of goods, the buyer must pay at the contract rate for any goods accepted. U.C.C. § 2.607.

(a) Acceptance of goods occurs when the buyer

(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(2) fails to make an effective rejection, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

U.C.C. § 2.606. In order to negate the effect of "acceptance" under the U.C.C., the buyer must reject the goods.

(a) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(b) Subject to the provisions of the two following sections on rejected goods

(1) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(2) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this chapter, he is

---

1. For brevity sake, all subsequent cites to the TEX.BUS. & COM.CODE will refer to the U.C.C.

under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(3) the buyer has no further obligations with regard to goods rightfully rejected.

U.C.C. § 2.602.

Failure of the buyer to reject even non-conforming goods within a reasonable time and to seasonably notify the seller of rejection automatically results in acceptance of the goods under U.C.C. § 2.606(a)(2). The buyer then becomes obligated to pay the full purchase price of the accepted goods under U.C.C. §§ 2.607(a) and 2.709(a)(1), and his remedies are limited to damages for breach of warranty under Section 2.714. *Micromedia v. Automated Broadcast Controls,* 799 F.2d 230, 235–36 (5th Cir.1986); *Explorers Motor Home Corp. v. Aldridge,* 541 S.W.2d 851, 854 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). Thus the common law doctrine that one contracting party is automatically excused from his contractual performance by the prior breach of the other party is wholly inapplicable to a contract for the sale of goods governed by the U.C.C..

GTI properly pleaded its cause of action by pleading that it had entered into a contract with Moore to provide it with "hot mix" and prime coat in exchange for a certain price. GTI pleaded that it delivered the goods, but that Moore failed to pay the agreed upon consideration. Texas courts do not require a party to plead the U.C.C., but simply to allege facts which would bring the contract under the auspices of the U.C.C. *See Gulf, Colorado & Santa Fe Rwy. Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963); WILLIAM V. DORSANEO, ROY R. ANDERSON & PETER WINSHIP, 9 TEXAS LITIGATION GUIDE § 210.100(b) (1995); TEX.R.CIV.P. 47. When the circumstances alleged reflect a situation from which a duty arises as a matter of law, it is not necessary to state specifically that, or allege the law under which, the duty exists. *See Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510–11 (1947); *Ransopher v. Deer,* 647 S.W.2d 106, 110 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Armstrong v. Rice,* 556 S.W.2d 620, 623 (Tex.Civ.App.—Texarkana 1977, writ

dism'd); *Orgain v. Butler,* 478 S.W.2d 610, 613 (Tex.Civ.App.—Austin 1972, no writ); *Bratcher v. Moore,* 219 S.W.2d 527, 530 (Tex. Civ.App.—Amarillo 1949, no writ).

Further, if Moore had any doubt as to what cause of action GTI was pleading, it was obligated to file special exceptions. The failure to do so waives any objections to the adequacy of GTI's pleadings. *See* TEX. R.CIV.P. 90; *Minugh v. Royal Crown Bottling Co.,* 267 S.W.2d 861 (Tex.Civ.App.—San Antonio 1954, writ ref'd).

When the U.C.C. controls the parties' agreement, the character of the document does not change. It is still a contract. Therefore, some of the same jury questions appropriately used in common law contract cases may also be utilized in U.C.C. contract cases (such as Question No. 9 in this case). *See* 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 101.02 (1992). However, when the U.C.C. diverges from the common law, the trial court must conform the questions and instructions accordingly. *See* 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 101.03 (1992).

The court submitted Question No. 9 to the jury, a question taken verbatim from the pattern jury charges, and appropriate for both common law and U.C.C. cases. In answer to this question, the jury found that Moore had, in fact, breached the contract. GTI was not required to request a jury question on "acceptance," as Moore suggests, since GTI pleaded and established conclusively that it delivered the goods and the goods remained in Moore's possession. GTI properly points out that the burden was upon Moore to plead and prove rejection of the hot mix and prime coat to defeat GTI's counterclaim. However, Moore failed to do either. Additionally, Moore failed to request a question concerning rejection of the goods. The Fifth Circuit has held the following:

A party claiming that it rightfully rejected nonconforming goods must demonstrate that it rejected the goods within a reasonable time following delivery and seasonably notified the seller. V.T.C.A., Bus. & C. § Sec. 2.602(a) ... [The buyer] failed to request an instruction pursuant to [Sec.

2.711] from the district court. Transoil had the burden of requesting instructions necessary to set out its theory of the case to the jury.

*Transoil (Jersey) Ltd. v. Belcher Oil Co.,* 950 F.2d 1115, 1120 (5th Cir.1992). During the charge conference, GTI objected both to the submission of "excuse" as an inaccurate statement of the law under the U.C.C., and to Moore's failure to request a jury question on rejection. But it was Moore's responsibility to urge the submission of a question on its affirmative defense in substantially correct wording, and it failed to do so.

Because the common law defense of "excuse" is not applicable in this case, we sustain GTI's point of error four. Since the jury found that Moore did, in fact, breach the contract, we hold that the inappropriate submission of a question on "excuse" was reasonably likely to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

Because of our holding in point of error four, it is unnecessary to address the remaining points of error. We reverse and remand GTI's counterclaim for new trial.