

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00243-CV

**THE LAW OFFICE OF DENNIS HUNSBERGER**,
Appellant

v.

**PHYSICIAN LIFE CARE PLANNING, LLC**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 2018CV04283
Honorable David J. Rodriguez, Judge Presiding

Opinion by:      Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: July 21, 2021

AFFIRMED

Appellee Physician Life Care Planning, LLC ("PLCP") sued appellant the Law Office of

Dennis Hunsberger ("Hunsberger")[1] for breach of contract on a sworn account. Hunsberger filed

a counterclaim against PLCP for breach of contract. After the trial court granted summary

judgment in PLCP's favor, Hunsberger appealed. We affirm.

---

[1] At all relevant times, Dennis Hunsberger was a solo practitioner doing business as the Law Office of Dennis Hunsberger. For clarity, we use the pronoun "he" and the possessive "his" in reference to "Hunsberger."

BACKGROUND[2]

PLCP provides damage evaluation reports and expert testimony for use in litigation. In 2016, Hunsberger contacted PLCP in connection with one of his personal injury cases. The case involved a five-year-old boy, Hunsberger's client, who was partially disabled with cerebral palsy. Hunsberger's theory of the case was that the boy was injured in utero when his mother slipped and fell at a grocery store. The boy's lawsuit included a claim for lost wages, which Hunsberger wished to support with expert testimony. In an initial conversation, a PLCP employee explained to Hunsberger that PLCP could supply Hunsberger with a medical expert, who would examine the boy and determine how much his cerebral palsy limited his abilities. An economic expert would use the medical evaluation to determine how much less the boy would earn in his lifetime with the injury.

The PLCP employee informed Hunsberger that he would have to fill out an intake form. The one-page "Client Intake Form" that Hunsberger filled out on April 18, 2016, provides a brief description of the boy's injury. At the bottom of the form, Hunsberger made selections by circling "Y" or "N." Hunsberger selected "Y" for "Vocational Assessment" and "Will you need an Economic Damages Report."

Four days later, Hunsberger and PLCP signed a "Retention Agreement." The agreement lists over two dozen "products" and their associated costs, and it lists over three dozen "services" and their associated costs. The products listed on the agreement include "Non-Catastrophic Life Care Plans," vocational assessments, and the following: "Economic Damages Reports (For cases in which no residual earnings capacity exists)" and "Economic Damages Reports (For cases with residual earnings capacity (as defined in a vocational assessment))." The agreement lists the costs

---

[2] The background is taken from the summary-judgment evidence, viewed in the light most favorable to Hunsberger.

for the economic damages reports as $2,500 and $1,950, respectively. Among the listed services on the Retention Agreement are a physician's interview and examination as well as court testimony by retained experts. The listed cost for court testimony is $6,500/day for testimony by a physician and $4,000/day for testimony by an economist. The Retention Agreement provides as to products: "An initial non-refundable retainer of 50% of the professional fee is due upon the commencement of the engagement. . . . The remaining 50% and any outstanding, reimbursable expenses are payable upon completion, and prior to release of any Products." As to services, the agreement provides that payment is due in advance of the provision of services. The Retention Agreement provides that a prevailing party in a suit to enforce the agreement is entitled to reasonable attorney's fees, costs, and expenses.

On the same day the parties signed the Retention Agreement, PLCP provided Hunsberger with two invoices. One invoice is for a "Non-Catastrophic Life Care Plan" and a physician's interview and examination. The other invoice bills for "Economic Damages w no risidual [sic] earnings capacity." Hunsberger paid these invoices. In September 2016, Hunsberger received the two expert reports referenced in the invoices. The Economic Damages Report provided an analysis of the boy's earning capacity as if he were completely disabled. The report by the medical expert, however, indicates that the boy suffered from mild cerebral palsy and that his condition was not catastrophic. After receiving the reports, Hunsberger held telephonic conferences with the experts.

In September 2017, Hunsberger initiated orders for trial testimony by PLCP's experts, and, in October 2017, PLCP sent Hunsberger two invoices for the testimony the experts were to give. In accordance with the prices stated on the Retention Agreement, the first invoice was for $6,500 for the physician's testimony, and the second invoice was for $4,000 for the economist's testimony. At the personal injury trial, in November 2017, the two experts gave testimony. The

jury returned a verdict against the boy, finding that the grocery store's liability had not been proven.

After trial, Hunsberger complained to PLCP that he should have received from the economist a vocational assessment and an economic damages report that included consideration of residual earnings capacity to complement the physician's report, which assessed the boy's injury as non-catastrophic.  After trial, PLCP demanded payment for the unpaid invoices for the experts' trial testimony.  In July 2018, PLCP filed the instant suit to recover the amount of the unpaid invoices along with interest, costs, and attorney's fees.  PLCP asserted in its petition a breach of contract claim, alleging that Hunsberger executed a written agreement whereby PLCP would provide Hunsberger with goods and services on an open account.  Hunsberger denied PLCP's claim and filed a counterclaim for breach of contract, alleging that PLCP provided him with "an incomplete life-care plan and/or economic assessment."

PLCP, thereafter, filed a traditional and no-evidence motion for summary judgment on the claims.  Hunsberger filed a response, and PLCP filed a reply, in which it moved to strike portions of Hunsberger's affidavit that he had filed with his response.  The trial court granted PLCP's motion to strike and its motion for summary judgment.  In a final judgment, the trial court awarded PLCP $10,500 in damages, representing the amount of the unpaid invoices, as well as interest, costs, and attorney's fees.  Hunsberger filed a motion for new trial, with attachments that were not included in his summary-judgment response.  The trial court denied Hunsberger's motion, and Hunsberger appealed.  On appeal, Hunsberger challenges whether PLCP is entitled to summary judgment on the claims and whether the award of attorney's fees is excessive.

### STANDARD OF REVIEW

PLCP moved for summary judgment on traditional grounds as to its breach of contract claim and on traditional and no-evidence grounds as to Hunsberger's claim.  "A party moving for

traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing TEX. R. CIV. P. 166a(c)). A traditional motion for summary judgment must stand on its own merits, and a "nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam); *see Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). If the movant satisfies its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "In a no-evidence summary-judgment motion, the movant contends that no evidence supports one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015) (citing TEX. R. CIV. P. 166a(i)). The trial court must grant the no-evidence summary-judgment motion unless the nonmovant raises a genuine issue of material fact on each challenged element. *Id.* We review grants of summary judgment *de novo*. *Parker*, 514 S.W.3d at 219. In our review, "we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

## DISCUSSION

I.  The Summary-Judgment Record

Neither party disputes that the evidence attached to PLCP's motion for summary judgment is competent evidence that the trial court considered before issuing judgment. However, Hunsberger relies on material in the record that PLCP challenges as stricken or otherwise not

before the trial court. We agree with PLCP that the evidence is not part of the summary-judgment record, and, consequently, we do not consider it on appeal.

The evidence falls into four categories, which we consider in turn. First, Hunsberger cites statements from his affidavit that the trial court struck when it granted PLCP's motion to strike. Hunsberger does not challenge the trial court's decision to strike these statements. "Under a summary-judgment review, we may not consider struck portions of the record because such evidence is not a part of the summary-judgment record." *Sauls v. Munir Bata, LLC*, No. 02-14-00208-CV, 2015 WL 3905671, at *5 (Tex. App.—Fort Worth June 11, 2015, no pet.) (mem. op.); *see also Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.). Because Hunsberger's affidavit testimony was struck and the decision to strike was not challenged on appeal, we do not consider the struck statements. *See Chandra v. Leonardo DRS, Inc.*, No. 06-20-00056-CV, 2020 WL 6878417, at *3 (Tex. App.—Texarkana Nov. 24, 2020, pet. denied) (mem. op.) ("Where evidence has been held to be inadmissible and that holding has not been challenged on appeal, this Court cannot consider the excluded evidence.") (citation and brackets omitted).

Next, Hunsberger cites to a letter he attached to a motion for leave to file additional evidence, which he filed five days after the summary-judgment hearing. Rule 166a of the Texas Rules of Civil Procedure require a nonmovant to file summary-judgment evidence seven days prior to the summary-judgment hearing. *See* TEX. R. CIV. P. 166a(c), (d). Under the rule, "[s]ummary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (citing TEX. R. CIV. P. 166a(c)). Here, Hunsberger did not secure a ruling on his motion for leave, and nothing appears in the record to indicate that he received leave of court to file late evidence. Consequently, we presume the trial court did not consider

Hunsberger's late-filed evidence. *See id.*; *cf. INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 2015) (presuming trial court did not consider late-filed summary-judgment response).

Likewise, nothing in the record suggests that the trial court allowed or considered new material attached to Hunsberger's motion for new trial. When a motion for new trial is filed after the rendition of a summary judgment, a trial court has the discretion to consider the grounds in the post-judgment motion and supporting proof and reaffirm its summary judgment based on the entire record. *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 729 (Tex. App.—San Antonio 2014, pet. denied). "Where the trial court affirmatively indicates on the record that it accepted or considered the evidence attached to a motion to reconsider, this court reviews the summary judgment based upon the grounds and proof in both prejudgment and post-judgment filings." *Id.* at 730 (citation omitted). However, a trial court has discretion "to simply deny a motion filed after the entry of summary judgment without considering its substance." *Id.* (citation omitted). If the latter occurs, we "need only consider arguments and evidence presented prior to the summary-judgment hearing." *Id.* (citation omitted).

The record shows that Hunsberger filed a motion for new trial that the trial court denied "after reviewing the Motion, the Response thereto filed by [PLCP], the Rebuttal thereto filed by [Hunsberger], and the Sur-reply filed by [PLCP]." The order does not affirmatively state that the trial court considered new evidence attached to Hunsberger's motion for new trial or new citations to evidence already in the record. *See Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.) ("An order denying a motion to vacate or reconsider does not 'affirmatively indicate[ ]' that the trial court considered later-filed evidence, submitted with a post-summary-judgment motion, when it merely states that the trial court 'considered the motion, all responses, and argument of counsel' and 'does not state [that the trial court] considered the evidence attached to the motion.'") (quoting *McMahan*

*v. Greenwood*, 108 S.W.3d 467, 499–500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied));

*McMahan*, 108 S.W.3d at 500 (declining to review new evidence that was attached to a motion for new trial because the trial court's order denying the motion stated only that the trial court considered the motion, all responses, and argument of counsel and did not affirmatively indicate consideration of new evidence); *cf. Soloman v. Whataburger Rests., LLC*, No. 04-17-00255-CV, 2018 WL 2121360, at \*2 (Tex. App.—San Antonio May 9, 2018, no pet.) (mem. op.) ("We disagree that the trial court listening to the arguments presented at a hearing on a motion for new trial is an affirmative indication that the trial court considered the evidence attached to the motion for new trial."). Because the trial court's order denying Hunsberger's motion for new trial does not affirmatively indicate that it considered any new evidence, we do not consider the new evidence attached to Hunsberger's motion for new trial. *See Soloman*, 2018 WL 2121360, at \*2; *PNP Petroleum I*, 438 S.W.3d at 729.

Last, PLCP argues our review should exclude consideration of deposition testimony newly cited in Hunsberger's motion for new trial. We agree and will only consider the deposition excerpts specifically cited in PLCP's motion for summary judgment and in Hunsberger's response. "The law is well-settled that 'when presenting summary-judgment proof, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court.'" *Soloman*, 2018 WL 2121360, at \*1 (quoting *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.)). In determining whether the parties have carried their burdens, we are "not free to search the entire record, including materials not cited to or relied on by the trial court." *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.). Attaching deposition transcripts "does not relieve the party of pointing out to the trial court where in the documents the issues set forth in the motion or response are raised." *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio

2006, no pet.). Hunsberger filed deposition transcripts with his response in the trial court but cited few passages of testimony. Although Hunsberger's motion for new trial cited additional deposition excerpts, the trial court did not affirmatively indicate that it considered these additional references. Consequently, we must presume the trial court considered only the portions of the depositions specifically cited in PLCP's motion and Hunsberger's response. *See Soloman*, 2018 WL 2121360, at *1–2 (considering only evidence cited in and attached to a summary-judgment motion and a response and not additional pages of deposition transcripts cited in a motion for new trial); *see also Mailloux v. KJ Envtl. Mgmt., Inc.*, No. 02-20-00059-CV, 2020 WL 6334176, at *5 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) ("[Nonmovant's] 'evidence' was not filed or identified in response to the motion for summary judgment and therefore cannot be considered as summary judgment evidence.").

With these parameters on the summary-judgment record, we consider whether PLCP established its entitlement to summary judgment. We look first at the breach of contract claims.

## II. Breach of Contract

Breach of contract is established upon proof: (1) of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). A valid, enforceable contract requires proof of "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *E-Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). An enforceable contract "must specify all its material and essential terms, and leave none to be

agreed upon as the result of future negotiations." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Radford v. McNeny*, 129 Tex. 568, 572, 104 S.W.3d 472, 475 (1937)).

PLCP points to the Retention Agreement as a valid contract that Hunsberger breached to its detriment. Hunsberger argues that the contract is invalid because it lacks essential terms, the contract's essential terms are ambiguous, and there was no "meeting of the minds." Further, Hunsberger argues that PLCP breached the contract, which excused his failure to pay for the experts' trial testimony.[3]

### A. Whether the Contract Lacks Essential Terms?

The gravamen of Hunsberger's challenges to the validity of the contract is that the Retention Agreement alone does not specify products and services ordered. This omission, according to Hunsberger, gives rise to a contract lacking essential terms, results in ambiguity, and defeats a "meeting of the minds."[4]

---

[3] Hunsberger also asserts that the common law applies to the parties' dealings, not the Uniform Commercial Code ("U.C.C."). *See* TEX. BUS. & COMM. CODE ANN. §§ 2.101–2.725. We agree. When parties enter into a contract for the sale of goods, the U.C.C. controls the conduct of the parties. *See Glenn Thurman, Inc. v. Moore Const., Inc.*, 942 S.W.2d 768, 771 (Tex. App.—Tyler 1997, no writ). "Where the U.C.C. applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedure set forth in the U.C.C." *Id.* Where a contract contains a mixture of sales and services, the U.C.C. applies if the sale of goods is the "dominant factor" or "essence of the transaction." *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 136 F. Supp. 3d 792, 810 (S.D. Tex. 2015) (citing *East Hill Marine, Inc. v. Rinker Boat Co., Inc.*, 229 S.W.3d 813, 818 (Tex. App.—Fort Worth 2007)). PLCP does not dispute that the common law applies over the U.C.C., and neither party has directed us to a case regarding a contract for expert evaluation, reports, and testimony in which the U.C.C. was applied. Independently, we have not located a case that treats an expert-witness contract as a sale of goods, governed by the U.C.C. *Cf. Tendeka, Inc. v. Nine Energy Serv. LLC*, No. 14-18-00018-CV, 2019 WL 6872942, at *5 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, no pet.) (mem. op.) ("Texas Courts apply the [U.C.C.] to contracts for the sale of goods even if the parties characterize the claim as a common law breach of contract or breach of warranty case."). Accordingly, we apply the common law because the sale of goods was not the "dominant factor" or "essence of the transaction" between the parties. *See Jonibach Mgmt. Tr.*, 136 F. Supp. 3d at 810; *cf. Palmer v. Espey Huston & Associates, Inc.*, 84 S.W.3d 345, 355–56 (Tex. App.—Corpus Christi 2002, pet. denied) (determining warranty complaints about the design of a breakwater were not subject to the U.C.C. because the transaction at issue was predominantly a sale of services).

[4] The parties acknowledge that Hunsberger did not raise his arguments about contract formation in the trial court. The Texas Supreme Court has reviewed whether a contract is patently ambiguous, even though the issue was not raised by the parties. *See Coker v. Coker*, 650 S.W.2d 391, 392–93 (Tex. 1983) (determining an agreement was ambiguous even though both parties asserted the agreement was unambiguous and moved for summary judgment); *cf. KSWO Television Co. v. KFDA Operating Co.*, 442 S.W.3d 695, 704 (Tex. App.—Dallas 2014, no pet.) ("An appellate court may consider whether a contract is ambiguous for the first time on appeal from a summary judgment."). Under this precedent, we review whether the contract between Hunsberger and PLCP is ambiguous. We also review the related

"In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Where an essential term is left for future negotiation, there is no binding contract. *Id.* "Whether a contract contains all of the essential terms for it to be enforceable is a question of law." *Bandera Cty. v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.). "[A]greements to enter into future contracts are enforceable if they contain all material terms." *Fischer*, 479 S.W.3d at 238 (citation omitted). Thus, "an agreement that contains all of its essential terms is not unenforceable merely because the parties anticipate some future agreement." *Id.*

The Retention Agreement fits the mold of an enforceable agreement to enter into future contracts. The parties describe the Retention Agreement as a "menu" contract because items and prices are listed, and the customer makes selections from this list. The Retention Agreement anticipates Hunsberger's selection of products and services from the list, and the invoices and PLCP's affidavit verifying the invoices are evidence of Hunsberger's selections. These invoices reflect that Hunsberger selected an economic damages report without an analysis of residual earnings capacity as well as trial testimony from a physician and an economist.

The parties have not directed us to cases discussing "menu" contracts, and the term "menu," as a contract type, is not commonly found in Texas cases or American cases more generally. However, caselaw is replete with examples of contracts similar to the Retention Agreement. In such cases, the contract consists of a document specifying general terms and rates

---

contract-formation issues pertaining to the essential terms and a "meeting of the minds" because these legal questions coincide to a large extent with the question of ambiguity. PLCP acknowledges that we may consider the issue of patent ambiguity for the first time on appeal, and it has cited no precedent indicating that we may not consider the related legal issues. Its citation to *Clark v. Mustang Mach. Co., Ltd.*, 571 S.W.3d 305, 308 (Tex. App.—Houston [1st Dist.] 2018, no pet.) in support of waiver is inapposite because waiver in that case concerned whether a party "ratified, substantiated and partially performed [a] warranty agreement."

for items to be selected later and subsequent documents memorializing selections from the list of items. *See In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) ("[A] contract can consist of more than one document . . . , and courts may construe all the documents as if they were part of a single, unified instrument.") (citation omitted). For example, the Texas Supreme Court held that a "requirements" contract, in which a supplier of cigarettes would supply all of the cigarettes that a customer required, was an option contract, which imposed on the seller an obligation to enter into one or more bilateral contracts in accordance with the contract. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 346–47 (Tex. 1955). Although the "requirements" contract did not provide for the quantity, brands, and styles of cigarettes to be sold, these omissions did not render the contract too indefinite to be enforceable. *See id.* at 345.

"Task order" and "delivery order" contracts also resemble the Retention Agreement. Like the "menu" contract at issue here, a "task order" or delivery order" contract sets prices and terms that apply when a specific task or service is later ordered. *See Corel Corp. v. United States*, 165 F. Supp. 2d 12, 20 (D.D.C. 2001) ("Task and delivery order contracts . . . essentially create a menu of goods or services of an indefinite quantity that can be ordered by [a federal] agency on an as needed basis."). Under federal procurement statutes, these contracts are valid. *See* 10 U.S.C. § 2304d(1)–d(2); *see also Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 350, 405–06 & n.67 (2009) (describing the history and role of "task and delivery order" contracts under federal procurement statutes).

Likewise, a suit on a sworn account is often based on an underlying contract, which sets the prices for goods and services to be sold after execution of the underlying contract. *See PennWell Corp. v. Ken Associates, Inc.*, 123 S.W.3d 756, 766 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (stating as an element for a suit on a sworn account "that the amount of the account is 'just,' that is, *the prices charged are pursuant to an express agreement*, or in the absence

of an agreement, that the charges are usual, customary, or reasonable" (emphasis added)); *accord Hartney v. Mustang Tractor & Equip. Co.*, No. 04-03-00108-CV, 2004 WL 86140, at \*1 (Tex. App.—San Antonio Jan. 21, 2004, no pet.) (mem. op.).  At heart, a suit on a sworn account is a contractual claim.  *See Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 914 (Tex. App.—Dallas 2008, no pet.) ("A suit on sworn account is not an independent cause of action; it is a procedural rule for proof of certain types of contractual (account) claims."); *accord HIS Indus., Inc. v. Keiger*, No. 04-12-00029-CV, 2013 WL 2445034, at \*3 (Tex. App.—San Antonio June 5, 2013, no pet.) (mem. op.).  To prove the claim, a plaintiff swears that the account is "just," and a "just" account can be established by an express agreement, which often is a written contract.  *See PennWell Corp.*, 123 S.W.3d at 766; *see also Harris, N.A. v. Obregon*, No. 05-10-01349-CV, 2013 WL 3524153, at \*2, 4–5 (Tex. App.—Dallas July 11, 2013, no pet.) (mem. op.) (directing the trial court to render judgment in a suit on a sworn account where the plaintiff provided a copy of the contract at issue and an affidavit that established an open account balance); *Cobalt Operating, LLC v. Associated Supply Co.*, No. 07-16-00326-CV, 2017 WL 4784937, at \*2 (Tex. App.—Amarillo Oct. 18, 2017, no pet.) (mem. op.) (affirming judgment in a suit on a sworn account where the parties entered into a written equipment-rental agreement and the defendant refused to pay charges itemized on an invoice).

Here, PLCP sued for breach of contract on a sworn account.  The Retention Agreement supplied a menu of prices and terms for payment.  The invoices and PLCP's affidavit proved the products and services delivered to Hunsberger.  *See United Bus. Machs. v. Entm't Mktg., Inc.*, 792 S.W.2d 262, 264 (Tex. App.—Houston [1st Dist.] 1990, no writ) (holding that a plaintiff in a suit on a sworn account provided uncontroverted summary-judgment evidence of the delivery of merchandise through an affidavit and signed invoices that showed receipt of the merchandise). We hold this evidence is sufficient to establish the essential terms of a contract.

*B. Whether the Contract Is Ambiguous?*

While PLCP looks to its affidavit, the Retention Agreement, and its invoices to establish the contract between the parties, Hunsberger looks to the Retention Agreement, the Intake Form, and preliminary emails to establish the contract. From here, Hunsberger argues that the contract is ambiguous because these documents do not specify whether Hunsberger selected a report that included consideration of residual earnings capacity or a report without this consideration.

For the reasons just discussed, we hold the contract's essential terms are established by the Retention Agreement and invoices as well as PLCP's affidavit, which verified the accuracy of these documents. The Intake Form and emails entered into before the execution of the Retention Agreement are not part of the parties' contract because they do not indicate that PLCP intended an offer by these documents.

"The intent of the parties to be bound is an essential element of an enforceable agreement and is often a question of fact." *John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (citing *Foreca, S.A. v. GRD Development Co., Inc.*, 758 S.W.2d 744, 746 (Tex. 1988). "However, where that intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law." *Id.* (citing *Hardman v. Dault*, 2 S.W.3d 378, 380 (Tex. App.—San Antonio 1999, no pet.)).

We hold, as a matter of law, the parties did not intend to be bound by the Intake Form and preliminary emails. To begin, Hunsberger acknowledges indirectly that the Intake Form did not create a contract. He states in his brief:

> On April 18, 2016, Mr. Hunsberger filled out the intake form for PLCP, designating that, *should they enter into an agreement*, PLCP was to provide him with a vocational assessment, an economic damages report, a neurophysiological evaluation, a physical assessment, a life care plan, and a present value assessment of the life care plan." (emphasis added).

- 14 -

Hunsberger's statement describes a typical procedure in which an agreement follows intake. *See Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 823 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Questions of contract formation must be resolved on objective standards.").

As to the one-page "Client Intake Form," it lacks numerous terms later found in the Retention Agreement, including an effective date, prices, delivery obligations, and explicit promises by either PLCP to provide products or services or by Hunsberger to pay for products or services. No party signed the Intake Form.

"To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer*, 479 S.W.3d at 237 (quoting *Pace*, 284 S.W.2d at 345). "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." *Id.*

We agree with PLCP that the Intake Form gauges a potential client's needs in contemplation of a future agreement and hold that the Intake Form does not amount to an enforceable contract, either alone or in conjunction with the Retention Agreement. By contemplating a future Retention Agreement, the Intake Form is akin to an unenforceable agreement to enter into a future contract. *See Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 371 (Tex. 2019) ("[A]greements to negotiate toward a future contract are not legally enforceable."); *see also John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 20 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding letter agreement explicitly stating that it was not binding except as to certain provisions did not raise a fact issue as to the parties' intent to be bound and determining, as a matter of law, there was no contract to be breached).

Likewise, the emails sent prior to the execution of the Retention Agreement do not establish a contract but were sent as part of the preliminary intake process. The earliest email acknowledges the initial telephone call between PLCP and Hunsberger and states that an "intake sheet" is

attached "to get started." Emails sent the day after Hunsberger filled out the Intake Form state: "I just wanted to confirm the products that you were going to be ordering;" "[W]e need you to execute a Retention Agreement;" and "Please . . . find attached a Preliminary Invoice which will reflect expected fees for your requested products and services. Upon receipt of your executed Retention Agreement, a formal invoice will be provided." As with the Intake Form, these emails do not confirm that the parties intended to be contractually bound. *See Fischer*, 479 S.W.3d at 237. Rather, the emails suggest that a binding contract would be made through execution of the Retention Agreement.

The consequence of our determination that the Intake Form and preliminary emails do not form a part of the contract is that it is irrelevant whether there is ambiguity in these documents in connection with the Retention Agreement, as Hunsberger argues.[5] As explained above, the parties' contract consists of the Retention Agreement and invoices, and the contract is unambiguous because an invoice specifies that Hunsberger ordered an economic damages report with no consideration of residual earnings capacity. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("Whether a contract is ambiguous is a question of law.").

### C. Whether There Was a "Meeting of the Minds?"

In his last contract-formation argument, Hunsberger argues there was no "meeting of the minds." We disagree for reasons that follow from our earlier analyses. "A 'meeting of the minds' is a mutual understanding and assent to the expression of the parties' agreement." *BoRain Capital, LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet. denied) (citation omitted). By providing the Retention Agreement, invoices, and an affidavit verifying the accuracy of the invoices, PLCP proved a meeting of the minds. *See Cobalt Operating, LLC*, 2017 WL 4784937,

---

[5] Hunsberger argues that the Intake Form and emails do not specify whether the economic damages report is to be with or without an analysis of residual earnings capacity and the Retention Agreement does not clear up this ambiguity.

at *3 (determining a plaintiff established through affidavits and invoices a contract and amounts owing under the contract); *United Bus. Machs.*, 792 S.W.2d at 264 (explaining a plaintiff provided sufficient summary-judgment evidence through invoices and an affidavit to establish goods sold, delivered, and the defendant's agreement to pay).

### D.  Whether Hunsberger Raised a Genuine Issue of Material Fact or Established a Valid Defense?

Having established a right to summary judgment for its breach of contract claim, the burden fell to Hunsberger to raise a genuine issue of material fact to preclude summary judgment. *See Lujan*, 555 S.W.3d at 84; *United Bus. Machs*, 792 S.W.2d at 264. Hunsberger provided no competent summary-judgment evidence to raise a material fact issue.  The trial court struck statements in his affidavit related to his contention that he ordered an economic damages report with an analysis of residual earnings capacity, and Hunsberger did not cite to deposition excerpts or other evidence in his summary-judgment response that contradicted PLCP's affidavit as to the accuracy of the invoices as a reflection of the products and services ordered.  Moreover, Hunsberger's attempt to marshal evidence was made in support of his argument that he selected an economic damages report with an analysis of residual earnings capacity through discussions and documents that predated the Retention Agreement.  For the reasons just discussed, the Intake Form and preliminary discussions did not comprise a contact.

Hunsberger, likewise, did not raise a material fact issue as to his affirmative defense that PLCP committed a breach of the contract by providing the wrong economic damages report. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (requiring a party opposing summary judgment to come forward with summary-judgment evidence sufficient to raise an issue of fact on each element of an affirmative defense); *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied) (stating a prior material breach by the other contracting

party is an affirmative defense).  On this record, Hunsberger did not provide summary-judgment evidence as to his affirmative defense that PLCP provided an incorrect expert report, in breach of the parties' contract.

Having rejected Hunsberger's contract formation arguments and his argument for PLCP's prior breach, we hold the trial court properly granted summary judgment on PLCP's breach of contract claim for recovery of the unpaid invoices.  PLCP also conclusively negated the "breach" element of Hunsberger's breach of contract claim, which was premised on the theory that PLCP breached the contract by providing the wrong economic damages report.  Consequently, PLCP established its entitlement to traditional summary judgment on both its claim and on Hunsberger's counterclaim.  *See* Tex. R. Civ. P. 166a(b), (c); *see also B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 260–61 (Tex. 2020) (explaining that appellate courts may review a traditional motion for summary judgment before a no-evidence motion).

## III.  Attorney's Fees

Last, Hunsberger argues the trial court erred by imposing an excessive attorney's fees award that does not bear a reasonable relationship to the amount in controversy.  In the final judgment, the trial court awarded PLCP attorney's fees pursuant to the terms of the Retention Agreement and the Texas Civil Practice and Remedies Code.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(7), (8) (allowing for the recovery of attorney's fees when the claim is for a sworn account or a contract).  The trial court's judgment awarded PLCP $10,500 for unpaid invoices and $36,124.83 for attorney's fees and expenses incurred through summary judgment.  It further awarded contingent attorney's fees and expenses of $2,300 if Hunsberger filed an unsuccessful motion for new trial, $25,000 if he unsuccessfully appealed to this court, $10,000 if he filed a petition for review with the Texas Supreme Court, $20,000 if his petition before the supreme court is briefed on the merits, and $10,000 if oral argument is required before the supreme court.

Hunsberger argues the award is excessive because the fees and expenses can amount to $103,424.83 for a case in which PLCP sought payment on invoices totaling $10,500.

We hold PLCP's summary-judgment evidence is sufficient to support its attorney's fees award. An attorney's affidavit can sufficiently establish the reasonableness of attorney's fees for summary judgment if the affidavit sets forth the attorney's qualifications, his or her opinion regarding the reasonableness of fees, and the basis for the opinion. *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied). Here, PLCP's attorney attested to the reasonableness of fees through an affidavit that described his work, his anticipated work in response to a motion for new trial and on appeal, his hourly fee, and his familiarity with reasonable and necessary attorney's fees for the kinds of services rendered. *See Lopez v. Rocky Creek Partners, LLC*, No. 04-19-00722-CV, 2021 WL 1199038, at *6 (Tex. App.—San Antonio Mar. 31, 2021, no pet. h.) ("A movant may be entitled to prospective, conditional appellate fees."). The attorney attached to his affidavit itemized billing records. In his summary-judgment response, Hunsberger did not contest whether the attorney's fees PLCP sought were reasonable and necessary. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) ("A 'reasonable' attorney's fee is one that is not excessive or extreme, but rather moderate or fair.") (citation omitted). Hunsberger first raised the issue in his motion for new trial, and, even then, he did not provide evidence contesting the reasonableness of the fees sought. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019) ("[I]f a fee opponent seeks a reduction [from the lodestar base calculation], it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure.").

"[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of

law." *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009) (citation omitted); *see also* TEX. R. CIV. P. 166a(c). "This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so." *In re Macy Lynne Quintanilla Tr.*, No. 04-17-00753-CV, 2018 WL 4903068, at *6 (Tex. App.—San Antonio Oct. 10, 2018, no pet.) (mem. op.) (citing *Smith*, 296 S.W.3d at 547). Here, because Hunsberger failed to controvert the affidavit as to attorney's fees with timely, competent summary-judgment evidence, the trial court properly granted summary judgment as to attorney's fees. *See id.* (affirming summary judgment as to attorney's fees based on an uncontroverted affidavit); *see also Basin Credit Consultants*, 2 S.W.3d at 374 (determining affidavit that "simply criticize[d] the amount of fees sought . . . as excessive" did not raise a fact issue regarding reasonableness); *Am. 10-Minute Oil Change, Inc. v. Metro. Nat. Bank-Farmers Branch*, 783 S.W.2d 598, 602 (Tex. App.—Dallas 1989, no writ) (clarifying that a trial court can render an award for attorney's fees in the amount sought based on uncontroverted evidence or refuse any award if fees are not recoverable; "[h]owever, to determine that attorney's fees are recoverable, but only in an amount less than that set forth in an uncontroverted affidavit, has the same effect as concluding that movant's summary judgment proof did not establish the claim as a matter of law.").

We overrule Hunsberger's issues on the reasonableness of the attorney's fees award.

### CONCLUSION

We affirm the trial court's summary judgment.

Rebeca C. Martinez, Chief Justice